**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 29 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

PATRICIO LOBOS,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 01-9501
(BIA No. A70-569-987)
(Petition for Review)

---

ORDER AND JUDGMENT *

---

Before **KELLY**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Patricio Lobos, a Chilean citizen and native who has conceded deportability, appeals from the decision of the Board of Immigration Appeals denying his petition for asylum and for withholding of deportation. Exercising jurisdiction under 8 U.S.C. § 1105a(a) (1995),[1] we deny the petition for review.

## I. Relevant facts and proceedings

On December 28, 1991, petitioner entered the United States as a visitor. Because he stayed longer than the six months authorized by his visa, the Immigration and Naturalization Service (INS) instituted deportation proceedings against him, after which petitioner applied for asylum and withholding of deportation.

---

[1] As we recently explained,

> [i]n 1996, 8 U.S.C. § 1105a was repealed by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009. IIRIRA dramatically changed the scope and nature of judicial review in exclusion cases. But because the INS commenced deportation proceedings against the petitioner before IIRIRA's effective date, April 1, 1997, and the final deportation order was entered after October 31, 1996, our review is governed by the pre-IIRIRA rules as amended by IIRIRA's transitional rules. *See* IIRIRA § 306(c)(1), *reprinted as amended in* 8 U.S.C. § 1252 note; IIRIRA 309(a), (c)(1) & (4), *reprinted as amended in* 8 U.S.C. § 1101 note. Under the transitional rules, § 1105a remains in effect but for minor procedural amendments.

*Woldemeskel v. INS*, 257 F.3d 1185, 1187 n.1 (10th Cir. 2001).

Petitioner claimed that he had endured past persecution and feared future persecution in Chile because of his political opinion and support of former president Augusto Pinochet. As support, petitioner provided testimony that in February 1991, he was abducted by a group of armed men, beaten, and threatened that, if he and his father (the secretary of the national Railway Labor Union) continued their opposition to President Aylwin, they would be killed. At his hearing, petitioner testified that his abductors were left-wing members of the government. The immigration judge noted, however, that the newspaper clipping petitioner used to support his allegations stated that his abductors were extreme leftist terrorists, not government agents, and was apparently based upon petitioner's account of the abduction. R. at 52. The judge also found that the fact that petitioner did not leave Chile to come to the United States for ten months after the incident notwithstanding that his visa was issued in August 1991 indicated that his fear of persecution was not substantial or genuine. The immigration judge concluded that petitioner had not suffered past persecution from governmental agents.

As to the issue of future persecution, the judge questioned petitioner's credibility based upon many inconsistencies in his testimony. He noted that petitioner's father had stayed in Chile without suffering actual persecution from the government and had continued working in his job. The judge also took

judicial notice of the Country Reports on Human Rights Practices for 1993 for Chile, which were prepared by the United States Department of State. The report stated that the current government was not responsible for any political killings or disappearances. *See* R. at 101-03. The report also noted that the 1993 Chilean government, which is now a "constitutional democracy," *id.* at 106, "includes many human rights leaders and victims in important positions." *Id.* at 103. According to the report, the judiciary was still dominated in 1993 by appointees of former president Pinochet's regime, *id.* at 104, a fact favorable to petitioner. The new regime also limited the jurisdiction of military courts over the prosecution of political crimes, *id.*, which was another fact indicating that judicial persecution would be unlikely.

The judge considered that there had been two successive free elections electing civilian presidents since 1990 and that human rights inquiries had been centered on prior administrations, including former president Pinochet's. The political entity petitioner had been involved with in 1991 no longer independently existed, having joined with a larger political group. The immigration judge determined that, because petitioner's father was retiring within the year and would no longer have the same kind of political influence, any threats based upon his father's support of Pinochet would decrease or disappear. Thus, the immigration judge concluded that petitioner's fears of future

persecution were overstated and that country conditions had changed. Finally, the judge believed that, if petitioner had really come to the United States out of a genuine fear of persecution, he would have immediately applied for asylum instead of waiting ten months after his visa ran out.

In August 1994, the immigration judge denied petitioner's application, concluding that he had not established statutory eligibility for asylum. The judge granted the government's request for voluntary departure on or before October 1, 1994. In an order dated December 18, 2000, the Board of Immigration Appeals (BIA) affirmed the immigration judge's decision and this petition for review followed.

## II. Discussion

An application for asylum involves two steps. First, the applicant must prove statutory eligibility by establishing refugee status. 8 C.F.R. § 208.13(a); *Kapcia v. INS*, 944 F.2d 702, 706 (10th Cir. 1991). To do so, the applicant must demonstrate either past "persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Persecution" means the "infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive" and

"encompasses more than just restrictions or threats to life and liberty." *Baka v. INS*, 963 F.2d 1376, 1379 (10th Cir. 1992) (quotations omitted).

Analysis of a claim based on a "well-founded fear of [future] persecution" includes a subjective and an objective component. *Kapcia*, 944 F.2d at 706. The applicant proves the objective component by "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." *Id*. at 706 (quotation omitted); *see also* 8 C.F.R. § 208.13(b)(2)(i)(B) (applicant must prove "reasonable possibility" of future persecution). If an objective basis is shown, the applicant must further show that his subjective fear is genuine. *Kapcia*, 944 F.2d at 706.

If an applicant demonstrates statutory eligibility based on past persecution, however, a rebuttable presumption of a reasonable fear of future persecution arises. 8 C.F.R. § 208.13(b)(1); *Nazaraghaie v. INS*, 102 F.3d 460, 462 (10th Cir. 1996). To rebut the presumption, the INS must establish by a preponderance of evidence that the applicant no longer has a well-founded fear of persecution because country conditions have changed. 8 C.F.R. § 208.13(b)(1)(i)(A); *Nazaraghaie*, 102 F.3d at 462. "[T]he immigration judge or [the BIA] may take administrative notice of changed circumstances in appropriate cases, such as where the government from which the threat of persecution arises has been

removed from power." *Kapcia*, 944 F.2d at 709 (quotations and emphasis omitted).

If the applicant proves eligibility for refugee status, in the second step of the application process, the Attorney General exercises "extremely broad" discretionary judgment to grant or deny asylum. *Id*. at 708.

## A. Standard of Review

We apply a substantial evidence standard to the BIA's resolution of the question whether an asylum applicant has established refugee status.

> The BIA's determination that [the applicant is] not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." It can be reversed only if the evidence presented by [the applicant] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.

*INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (citation omitted) (quoting 8 U.S.C. § 1105a(a)(4) (1995)). We will not, therefore, "weigh the evidence or . . . evaluate the witnesses' credibility." *Kapcia*, 944 F.2d at 707 (quotations omitted). At the second step, we review the BIA's discretionary decision to deny asylum for abuse of discretion. *Id.* at 708. We will not substitute our judgment for that of the BIA, but we do require a "rational connection between the facts found and the choice made." *Id.* (quotations omitted).

**B. Analysis**

**1. Asylum.** Petitioner claims that he has proven that he was persecuted in the past by the Chilean government so as to create an unrebutted presumption of fear of future persecution. We have carefully reviewed the record and hold that the BIA's factual and credibility determinations discussed, *supra*, are supported by substantial evidence on the whole record.

Petitioner also claims that he has proven a well-founded fear of future persecution, entitling him to a grant of asylum and withholding of deportation. Petitioner may prove a well-founded fear of persecution based on his political opinion in either of two ways: by demonstrating that he would be personally singled out for persecution in Chile if he returned, or by showing a reasonable fear of persecution because of his membership in a group subject to "a pattern or practice of persecution." 8 C.F.R. § 208.13(b)(2)(iii)(A)-(B); *Woldemeskel v. INS*, 257 F.3d 1185, 1190 (10th Cir. 2001). The group must consist "of persons similarly situated to [him] on account of . . . political opinion." 8 C.F.R. § 208.13(b)(2)(iii)(A); *Woldemeskel*, 257 F.3d at 1190-91.

The BIA concluded that petitioner failed to meet his burden of proof under either approach, and we agree. Petitioner failed to show particularized persecution by the government targeted at him or his family. Petitioner's father's affidavit states only that he has been "put off" in his career, whatever that means,

because he is not "a participant to the current government," that someone had thrown rocks against his house, and that he and his wife had received unspecified "threats and insults over the telephone." R. at 110. Petitioner admitted that, although his father was still actively opposed to leftist government, he still worked in the national railroad company. R. at 76. Thus, the record only supports a finding that petitioner may experience political alienation and threats because he disagrees with what he perceives to be the current government's policies. *See Woldemeskel*, 257 F.3d at 1191-92 (noting that disagreement with governmental policies and termination of employment is insufficient to support a grant of asylum); *Baka*, 963 F.2d at 1379 (well-founded fear must be based on more than just restrictions or threats to life and liberty).

The record also supports the BIA's decision that petitioner did not meet his burden to establish a well-founded fear of persecution based upon a practice of persecuting members of his political group. *See Woldemeskel*, 257 F.3d at 1191 ("A pattern or practice of persecution has been defined as something on the order of organized or systematic or pervasive persecution.") (quotation omitted). We agree with the BIA that petitioner's objective evidence indicates that persecutions and killings of individuals who had supported Pinochet were conducted by leftists terrorists and not by the Chilean government, and that the government had prosecuted those suspected in the killings. Petitioner simply provided no

evidence that individuals or groups supportive of Pinochet's former government now, or have ever, suffered systematic or pervasive persecution from the new government.

   **2. Withholding of deportation.**   Petitioner has likewise failed to show entitlement to withholding of deportation.  In order to demonstrate such eligibility, the applicant must establish a "clear probability of persecution" through presentation of "evidence establishing that it is more likely than not that [the applicant] would be subject to persecution on one of the specified grounds." *INS v. Stevic* , 467 U.S. 407, 429-30 (1984).  Because substantial evidence supports the BIA's decision denying his asylum claim, petitioner clearly could not carry his burden under the more stringent standard required for withholding of deportation.  *See Woldemeskel* , 257 F.3d at 1193.

   We accordingly DENY the petition for review and AFFIRM the BIA's decision to deny asylum and withholding of deportation and to grant voluntary departure.

Entered for the Court


Bobby R. Baldock
Circuit Judge