UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

YESHWARED WOLDEMESKEL,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 00-9516
(INS No. A29-910-501)

---

ORDER
Filed October 1, 2001

---

Before **TACHA**, Chief Judge, **McKAY**, and **CUDAHY**,[*] Circuit Judges.

---

This matter is before the court on Ms. Woldemeskel's petition for panel rehearing and petition for rehearing en banc. Upon consideration, the petition for rehearing is denied. The panel, however, has determined that the opinion should be revised. The last full paragraph of Part II.C, which begins "We emphasize that," is deleted from the opinion. A copy of the revised opinion is attached to this order.

The petition for rehearing en banc was transmitted to all of the judges of

---

[*]Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

the court who are in regular active service as required by Fed. R. App. P. 35. As

no member of the panel and no judge in regular active service on the court

requested that the court be polled, that petition is also denied.

Entered for the Court
PATRICK FISHER, Clerk of Court


by:
    Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 25 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

YESHWARED WOLDEMESKEL,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 00-9516

---

**ON REVIEW FROM AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS
(INS No. A29-910-501)**

---

Kenneth H. Stern (Stephanie Goldsborough, with him on the briefs), Stern &
Elkind, Denver, Colorado, for Petitioner.

Erin Albritton, Attorney, Office of Immigration Litigation, Civil Division (David
W. Ogden, Assistant Attorney General, Civil Division, and David V. Bernal,
Assistant Director, Office of Immigration Litigation, with her on the brief),
United States Department of Justice, Washington, DC, for Respondent.

---

Before **TACHA**, Chief Judge, **McKAY**, and **CUDAHY**,[*] Circuit Judges.

---

**TACHA**, Chief Judge.

---

[*]Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court
of Appeals for the Seventh Circuit, sitting by designation.

The petitioner appeals the Board of Immigration Appeals' order denying her request for asylum and withholding of deportation and granting voluntary departure. Exercising jurisdiction under 8 U.S.C. § 1105a(a) (1995),[1] we deny the petition for review.

## I. Background

The petitioner, Ms. Yeshwared Woldemeskel, is a native and citizen of Ethiopia. In October 1992, she entered the United States on a temporary visa authorizing a six-month stay. Because she stayed longer than authorized by her visa, the Immigration and Naturalization Service (INS) instituted deportation proceedings against her, after which Ms. Woldemeskel applied for asylum and withholding of deportation claiming that she endured past persecution and feared future persecution in Ethiopia because of her ethnicity and political opinion. In August 1994, the immigration judge denied her request for asylum and

---

[1] In 1996, 8 U.S.C. § 1105a was repealed by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. IIRIRA dramatically changed the scope and nature of judicial review in exclusion cases. But because the INS commenced deportation proceedings against the petitioner before IIRIRA's effective date, April 1, 1997, and the final deportation order was entered after October 31, 1996, our review is governed by the pre-IIRIRA rules as amended by IIRIRA's transitional rules. See IIRIRA § 306(c)(1), reprinted as amended in 8 U.S.C. § 1252 note; IIRIRA 309(a), (c)(1) & (4), reprinted as amended in 8 U.S.C. § 1101 note. Under the transitional rules, § 1105a remains in effect but for minor procedural amendments.

withholding of deportation and granted voluntary departure, concluding Ms. Woldemeskel had not established statutory eligibility for asylum. In an order dated May 15, 2000, the Board of Immigration Appeals (BIA) affirmed the immigration judge's decision and this petition for review followed.

During the asylum proceedings, Ms. Woldemeskel claimed that she was the victim of past persecution under the Mengistu regime and that she feared future persecution under the Transitional Government of Ethiopia (TGE), which replaced the Mengistu regime in 1991. In 1977, at the age of seventeen, the Mengistu authorities allegedly arrested and imprisoned Ms. Woldemeskel for twelve months because she was believed to be a member of a political opposition group called the Ethiopian People's Revolutionary Party (EPRP). Ms. Woldemeskel testified that, during her first two months of imprisonment, she was threatened often with a gun and tortured by prison authorities who gagged her, tied her upside down, and whipped and hit her. When released from prison, authorities warned she would be arrested again if she worked with individuals opposing the Mengistu government.

From 1978 to 1990, Ms. Woldemeskel does not claim to have suffered further persecution. During this time, she married and had two children. In 1991, Ethiopia experienced a change in government with the election of the TGE, a group dominated by leaders of Tigrean ethnicity who belonged to the Ethiopian

People's Revolutionary Democratic Front (EPRDF), the political group currently in power in Ethiopia. Ms. Woldemeskel claims the leaders of the TGE targeted Ethiopians of Amhara ethnicity, asserting that she and her husband were fired as a result of their Amhara heritage. In addition, she and her husband were members of a political opposition group called the All Amhara People's Organization (AAPO). Because her husband led a group protesting the firing of Amharas, he was allegedly arrested by the TGE in 1992. She claims that authorities then threatened to arrest her too if she did not stop protesting her husband's arrest. Shortly thereafter she obtained an Ethiopian passport and left the country. Because she was unable to obtain visas for her children, she had to leave them in Ethiopia with a friend.

## II. Asylum

A request for asylum involves two steps. First, the asylum applicant has the burden of proving her statutory eligibility by establishing refugee status. 8 C.F.R. § 208.13(a)[2]; <u>Kapcia v. INS</u>, 944 F.2d 702, 706 (10th Cir. 1991). In order to establish refugee status, the applicant must demonstrate either past "persecution or a well-founded fear of [future] persecution on account of race,

---

[2] Citations to the C.F.R. are based on the current version of the regulations. Although 8 C.F.R. § 208.13 was recently amended, <u>see</u> 65 Fed. Reg. 76121, 76133-34 (Dec. 6, 2000), it did not change the substance of the provisions applicable to Ms. Woldemeskel. In order to minimize potential confusion, we cite to the most recent version.

religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Although persecution is not explicitly defined, we have observed that it requires the "infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive" and requires "more than just restrictions or threats to life and liberty." Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (internal quotation marks omitted). Analysis of a claim specifically based on a "well-founded fear of [future] persecution" includes both a subjective and an objective component. Kapcia, 944 F.2d at 706. The applicant must first prove an objective basis by "'credible, direct, and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution.'" Id. at 706-07 (quoting Aguilera-Cota v. INS, 914 F.2d 1375, 1378 (9th Cir. 1990)); see also 8 C.F.R. § 208.13(b)(2)(i)(B) (applicant must prove "reasonable possibility" of future persecution). If an objective basis exists, the applicant must show her subjective fear is genuine. Id. at 706.

If the applicant proves her eligibility for refugee status, the Attorney General then exercises discretionary judgment in either granting or denying asylum. Id. at 708. In general, the Attorney General's discretion at this second step in an asylum claim is "extremely broad." Id. But if an applicant demonstrates statutory eligibility based on *past* persecution, a rebuttable

-5-

presumption of a reasonable fear of future persecution arises. 8 C.F.R. §
208.13(b)(1); <u>Nazaraghaie v. INS</u>, 102 F.3d 460, 462 (10th Cir. 1996). In order
to rebut the presumption in favor of the favorable exercise of discretion, the INS
must prove by a preponderance of evidence that the petitioner no longer has a
well-founded fear of persecution because country conditions have changed. 8
C.F.R. § 208.13(b)(1)(i)(A); <u>Kapcia</u>, 944 F.2d at 709. Alternatively, "the
immigration judge or [the BIA] may take administrative notice of changed
circumstances in appropriate cases, such as where the government from which the
threat of persecution arises has been removed from power." <u>Id.</u> (internal
quotation marks and emphasis omitted).

In addition, when an asylum applicant shows she experienced "past
persecution so severe that repatriation would be inhumane," she may be eligible
for a discretionary, humanitarian grant of asylum even when no future danger of
persecution exists. <u>Baka</u>, 963 F.2d at 1379. According to the relevant
regulation, a humanitarian grant of asylum is appropriate when the "applicant has
demonstrated compelling reasons for being unwilling or unable to return . . .
arising out of the severity of the past persecution." 8 C.F.R. §
208.13(b)(1)(iii)(A).

A.    **Standard of Review**

We apply a substantial evidence standard to the BIA's resolution of the

first step of an asylum claim–whether an asylum applicant has established refugee status: "The BIA's determination that [the applicant is] not eligible for asylum must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' It can be reversed only if the evidence presented by [the applicant] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal citation omitted) (quoting 8 U.S.C. § 1105a(a)(4) (1995)). We will not, therefore, "weigh the evidence or . . . evaluate the witnesses' credibility." Kapcia, 944 F.2d at 707 (internal quotation marks omitted). At the second step of an asylum claim, which requires the exercise of agency discretion, we review the BIA's decision for abuse of discretion. Rezai v. INS, 62 F.3d 1286, 1289 (10th Cir. 1995). Recognizing the BIA's broad discretion, we will not substitute our judgment for that of the BIA, but do require a "rational connection between the facts found and the choice made." Kapcia, 944 F.2d at 708 (internal quotation marks omitted).

## B. Eligibility for Asylum

Ms. Woldemeskel argues she is eligible for asylum under any of the approaches discussed above: (1) humanitarian asylum based on past persecution by the Mengistu regime; (2) asylum based on the rebuttable presumption created by past persecution; and (3) asylum based on her well-founded fear of

persecution under the current government. The immigration judge concluded–and the BIA agreed–that Ms. Woldemeskel was not entitled to asylum under any of these approaches. We agree.

1.     Past Persecution

Concerning her request for humanitarian asylum, the BIA did not abuse its discretion in deciding that the past persecution was not severe enough to warrant a grant of asylum on humanitarian grounds. Ms. Woldemeskel's imprisonment under the Mengistu regime occurred several years ago. Afterwards, she lived in Ethiopia for many years free from harassment or discrimination. Hence, the record shows a rational connection between the facts in this case and the BIA's finding that the imprisonment was not sufficiently severe.

Because the BIA simply stated that the past persecution alone did not compel a grant of asylum, Ms. Woldemeskel argues that the BIA abused its discretion by not engaging in an individualized review of the evidence. Although we may, of course, review the BIA's order for "procedural regularity," we have recognized the BIA need not "write an exegesis on every contention." Panrit v. INS, 19 F.3d 544, 545 (10th Cir. 1994) (internal quotation marks omitted). Instead, the BIA must "consider the issues and announce its decision in terms sufficient to enable us, as a reviewing court, to perceive that it has heard and considered the arguments rather than merely reacted." Id. Given the BIA's

detailed recitation of facts and its acknowledgment that much time has passed since Ms. Woldemeskel's ordeal, we are satisfied that the BIA heard and considered all the evidence and arguments. Moreover, we note the governing regulation explicitly requires that the asylum applicant "demonstrate[] compelling reasons" for her unwillingness to return, 8 C.F.R. § 208.13(b)(1)(iii)(A), in order to be eligible for asylum on humanitarian grounds. Although the BIA appears to have exercised its discretion in denying her humanitarian claim, Ms. Woldemeskel has arguably failed to establish her eligibility by asserting compelling reasons for her unwillingness to return.

Ms. Woldemeskel also argues the INS failed to rebut the presumption of future persecution created by the evidence of past persecution. This argument clearly fails because the record contains considerable evidence that conditions in Ethiopia changed with the 1991 transition in power. Furthermore, both the immigration judge and the BIA acknowledged the 1991 change in government and concomitant change in country conditions. The presumption was clearly rebutted, shifting the burden back to Ms. Woldemeskel to prove she is eligible for refugee status because of a well-founded fear of persecution under the TGE, rather than the Mengistu regime.

2.     Well-Founded Fear of Persecution

Ms. Woldemeskel may prove a well-founded fear of persecution based on

her Amhara ethnicity or political opinion in one of two ways: she may demonstrate that she would be singled out personally for persecution in Ethiopia, or she may show she has a reasonable fear of persecution because of her membership in a group subject to "a pattern or practice of persecution." 8 C.F.R. § 208.13(b)(2)(iii)(A)-(B). The group must consist "of persons similarly situated to [her] on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 208.13(b)(2)(iii)(A). The BIA concluded she failed to meet her burden of proof under either approach and we agree. Although Ms. Woldemeskel may subjectively fear future persecution in Ethiopia, she has failed to meet her burden in proving an objectively reasonable fear of persecution should she return to Ethiopia.

The BIA concluded the record does not support a finding that Ms. Woldemeskel is a member of a group currently subject to a pattern or practice of persecution. We agree with the BIA's conclusion because, although the record does show continued political unrest and ethnic conflict in Ethiopia, it does not show that members of the AAPO or people of Amhara heritage are subject to a pattern or practice of persecution. A pattern or practice of persecution has been defined as "something on the order of organized or systematic or pervasive persecution." Makonnen v. INS, 44 F.3d 1378, 1383 (8th Cir. 1995). The record contains evidence that the EPRDP, the organization that controlled the TGE and

-10-

that is now in power, may be responsible for various human rights violations, including extra-judicial killings and torture, but the evidence does not support the conclusion that certain groups suffer systematic or pervasive persecution. Some evidence demonstrates that the EPRDF has imprisoned and harassed members of political opposition groups and that faculty members of Amhara ethnicity have been dismissed from the university. This evidence, however, does not support a finding of systematic and pervasive persecution.

Moreover, Ms. Woldemeskel failed to prove she is similarly situated to individuals currently targeted for harassment and discrimination. The evidence shows that many, if not all, of the victims of harassment and intimidation are AAPO leaders and outspoken activists. For example, the 1994 State Report on Ethiopia's country conditions acknowledges that AAPO activists believed by the TGE to advocate violence or insurrection are often arrested, but regular AAPO members have not been targeted. Ms. Woldemeskel has failed to prove that her position in the AAPO is similar to those previously targeted by the government. See, e.g., Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997) (requiring asylum applicant prove that his position in a political opposition group was similar to those members of the group subject to persecution).

In addition to finding that Ms. Woldemeskel is not similarly situated to individuals undergoing persecution, the BIA also concluded the evidence failed

to support Ms. Woldemeskel's claim that she will be personally singled out for persecution. Even if she and her husband were fired because of their ethnicity, this fact alone does not constitute persecution. As both the immigration judge and the BIA noted, governmental employees are often replaced when a new administration takes office. Furthermore, we have recognized that termination of employment or fear of unemployment does not–without more–support a grant of asylum. Baka, 963 F.2d at 1379 (citing Zalega v. INS, 916 F.2d 1257, 1260 (7th Cir. 1990) (requiring substantial economic detriment to support grant of asylum)). In addition, like the BIA, we need not address whether her husband's political opinions will be imputed to Ms. Woldemeskel because the evidence in the record does not show clearly that he was arrested based on his political opinion and activism. In order to prove a well-founded fear of persecution based on her political opinion, Ms. Woldemeskel had the burden of proving she fears particularized persecution targeted at her personally. Instead, the record only supports a finding that she may experience political alienation because she disagrees with the government's policies. See Safaie v. INS, 25 F.3d 636, 640 (8th Cir. 1994) (noting that an asylum applicant's disagreement with repressive governmental policies is insufficient to establish refugee status).

In support of her argument that she has a well-founded fear of individualized persecution, Ms. Woldemeskel challenges the BIA's refusal to

consider an allegedly official Ethiopian document, which orders her arrest for her political involvement with the AAPO. She claims this document proves the government will seek to arrest her upon her return. The immigration judge and the BIA, however, did not consider the document because it was not authenticated according to regulation, see 8 C.F.R. § 287.6(a)-(b),[3] and its timing and content raise doubts about its credibility. The document conveniently surfaced as Ms. Woldemeskel was preparing her asylum application, having last been in the possession of her brother. In addition, it contains self-serving information totally unnecessary for authorization of an arrest but useful in preparing an asylum application, such as details regarding Ms. Woldemeskel's friend, her political activity, and her departure from Ethiopia. We may not weigh the evidence, and we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable. Given the document's timing and content, the BIA reached a reasonable conclusion supported by substantial evidence. In short, the record supports the BIA's

---

[3] Because the BIA did not rely solely on her failure to follow the regulation, we need not address Ms. Woldemeskel's argument that, under prior BIA decisions, her failure to comply with the regulation's procedures does not automatically invalidate the document. Similarly, we need not discuss her argument that she did not have to comply with the regulation because both the INS and the immigration judge conceded that a copy was sufficient. Even if the document had been authenticated under the regulation, the immigration judge and the BIA remained free to assess its credibility.

-13-

decision that Ms. Woldemeskel did not meet her burden in establishing a well-founded fear of persecution.

## C.    Administrative Notice

Ms. Woldemeskel argues that the BIA violated her Fifth Amendment right to due process by taking administrative notice of three facts contained in the State Department's 1999 Country Reports on Human Rights Practices and not providing her with an opportunity to respond to these facts. Because of their specialized knowledge in certain specific subject areas, administrative agencies may "take notice of technical or scientific facts that are within the agency's area of expertise." Llana-Castellon v. INS, 16 F.3d 1093, 1096 (10th Cir. 1994) (internal quotation marks omitted). It is well established that the BIA "may take administrative notice of commonly acknowledged facts, which may include current events bearing on an applicant's well-founded fear of persecution." Kowalczyk v. INS, 245 F.3d 1143, 1147 (10th Cir. 2001) (internal quotation marks omitted). In addition, the BIA "may draw reasonable inferences from the evidence which comport with common sense." Kapcia, 944 F.2d at 705 (internal quotation marks omitted).

The BIA may not, however, base its decision primarily on facts not contained in the record without providing asylum applicants with notice and the opportunity to rebut inferences drawn from those facts. See id. 705-06;

Kowalczyk, 254 F.3d at 1147-48. We have repeatedly recognized that individuals subject to deportation are entitled to procedural due process, which provides an "'opportunity to be heard at a meaningful time and in a meaningful manner.'" See, e.g., Llana-Castellon, 16 F.3d at 1096 (internal quotation marks omitted) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

In Ms. Woldemeskel's case, however, the BIA did not base its decision on the administratively noticed facts, which at most merely supplement the BIA's conclusion that "[t]here is no basis in the record upon which to conclude that persons similarly situated as the respondent are persecuted in Ethiopia simply on account of their Amhara ethnicity or their membership in the AAPO." In re Woldemeskel, No. A29 910 501, at 2 (BIA May 15, 2000). As we have already discussed, the record lacks evidence showing Ms. Woldemeskel had a well-founded fear of persecution based on her AAPO membership or Amhara ethnicity. Ms. Woldemeskel would first have to meet her burden of proof before the three facts from the State Department report would have any detrimental effect on her case.

Even if she had established statutory eligibility, the administratively noticed facts would have little impact on her case. The first fact recognizes the establishment in 1992 of a special prosecutor's office committed to vindicating human rights violations under the Mengistu regime—a detail also included in the

record.  The second fact simply recognizes that the EPRDF formally replaced the TGE in 1995, a fact with little significance because both parties acknowledge that the TGE was dominated by the EPRDF; hence, the BIA's recognition of the 1995 transition is at most an acknowledgment that country conditions today are similar to those under the TGE.  The final fact notes that political opposition parties are anticipated to participate in the May 2000 elections.  We recognize that this is a misstatement of the 1999 report, which indicates that opposition parties are expected to *protest*.  But although this is a rather disconcerting error, the reality that opposition groups planned to protest does not help Ms. Woldemeskel prove her case for asylum.

### III.  Withholding of Deportation

An asylum application also includes a request for withholding of deportation, which the Attorney General must grant if the statutory criteria are met.  An applicant is entitled to withholding of deportation if the Attorney General "determines that [the applicant's] life or freedom would be threatened . . . on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1253(h) (1994 & Supp. 1995).  The burden of proof for withholding of deportation is, however, significantly higher than that for asylum.  In order to demonstrate eligibility for withholding of deportation, the applicant must establish a "clear probability of persecution"

through presentation of "evidence establishing that it is more likely than not that [the applicant] would be subject to persecution on one of the specified grounds." INS v. Stevic, 467 U.S. 407, 429-30 (1984). Because substantial evidence supports the BIA's decision denying the asylum claim, Ms. Woldemeskel clearly did not carry her burden of proof under the more stringent standard required for withholding of deportation. See, e.g., Nazaraghaie, 102 F.3d at 465; Kapcia, 944 F.2d at 709.

We accordingly deny the petition for review and AFFIRM the BIA's decision to deny asylum and withholding of deportation and to grant voluntary departure.