**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANDREI IGOSHIN; ELENA
IGOSHIN; JULIA IGOSHIN,

        Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

        Respondent.

No.  01-9527
(BIA Nos. A72 449 618,
A72 453 306
& A72 450 957)
(Petition for Review)

---

**ORDER AND JUDGMENT**  *

---

Before  **HENRY** ,  **ANDERSON** , and  **HARTZ** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioners Andrei and Elena Igoshin and their daughter Julia seek review of the Immigration Judge's (IJ) determination that they are not eligible for asylum and withholding of deportation. We deny the petition.

Petitioners are Russian nationals who became members of the Church of Jesus Christ of Latter Day Saints (LDS) in 1991. [1] Prior to 1991, they were not members of any religious group. A few weeks after being baptized into the LDS church, Mr. Igoshin was summoned to the police station to have his passport checked. At that time, he was informed by an official of the Russian Bureau of State Security (KGB) that LDS missionaries were actually agents of foreign governments and were engaged in espionage. He was asked to cooperate by disclosing information about their activities. He refused. He was asked twice more and again refused.

After that, he began receiving harassing phone calls, up to several times a day. The harassment became more intense and Mr. Igoshin was told he would lose his job if he did not cooperate. He again refused and lost his job a few days later. Mr. Igoshin then began receiving anonymous calls threatening his life. In December, 1991, he was accosted and beaten in the stairway of his apartment building. He then attempted to apply for an exit visa, but was denied permission.

---

[1]     This recitation of facts was accepted by the IJ and the BIA who found that Mr. Igoshin's testimony was fully credible.

He eventually obtained one through the black market. Mr. Igoshin arrived in the United States in January 1992 with authorization to remain until July 1992. Mrs. Igoshin and their daughter arrived in July 1992 with authorization to remain until January 1993.

Mr. Igoshin applied for political asylum and withholding of deportation shortly after his arrival. See Petitioners' Br., Ex. A at 1 (Form I-589). In his application, Mr. Igoshin stated that he was applying for asylum because he feared he would be persecuted and possibly imprisoned if he were to return to Russia due to the fact that he had "refused to cooperate with the KGB in informing on American LDS missionaries." Id. at 3.

The BIA determined that the Igoshins were not eligible for asylum or withholding of deportation. The BIA agreed with Mr. Igoshin that he had probably been harassed, lost his job, and was beaten due to his refusal to spy on the LDS missionaries. The BIA concluded, however, that the harassment did not occur on account of his religion. The BIA noted that impediments to religious freedom were due to the Russian Orthodox Church's attempts to retain membership and not from the government or KGB. The BIA concluded that Mr. Igoshin's fear of future persecution was insupportable.

On appeal, petitioners raise ten issues. These issues can be summarized as urging that the BIA's decision should be reversed because, contrary to the BIA's

conclusion, petitioners did establish both past persecution and a well-founded fear of future persecution based on their religion and membership in a particular social group.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) "altered the availability, scope, and nature of judicial review in INS cases." Rivera-Jimenez v. INS, 214 F.3d 1213, 1215 n.1 (10th Cir. 2000). Because petitioners' deportation proceedings began before April 1, 1997, and the BIA's decision was entered more than thirty days after IIRIRA's enactment date of September 30, 1996, IIRIRA's transitional rules apply. Id.

An asylum applicant must first prove "statutory eligibility by establishing refugee status." Woldemeskel v. INS, 257 F.3d 1185, 1188 (10th Cir. 2001). The applicant can accomplish this by establishing "either past persecution or a well- founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," as manifested by an infliction of suffering or harm which is regarded as offensive and involves "more than just restrictions or threats to life and liberty." Id. (quotation omitted).

> Analysis of a claim specifically based on a well-
> founded fear of future persecution includes both a
> subjective and an objective component. The applicant
> must first prove an objective basis by credible, direct,
> and specific evidence in the record, of facts that would
> support a reasonable fear that the petitioner faces
> persecution. If an objective basis exists, the applicant
> must show her subjective fear is genuine.

Id. at 1188-89 (quotations and citation omitted).

> We apply a substantial evidence standard to the BIA's resolution of the first step of an asylum claim . . . . The BIA's determination that the applicant is not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. It can be reversed only if the evidence presented . . . was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed. We will not, therefore, weigh the evidence or . . . evaluate the witnesses' credibility.

Id. at 1189 (quotations omitted).

Petitioners attempted to show they were eligible for asylum or withholding of deportation because they were persecuted on account of their religion. See 8 U.S.C. § 1101(a)(42)(A). Such persecution need only be " a motive for the persecution in question; it need not be the sole motive." Navas v. INS , 217 F.3d 646, 656 (9th Cir. 2000) .

Mr. Igoshin testified he did not believe he was persecuted on religious grounds, but because he refused to be a spy and to provide the KGB with information about the missionaries who were believed to be spies, Admin. R. at 145, although he believed his religion indirectly caused his persecution, id. at 162. The KGB did not ask him questions about Russian Mormons. Id. at 165. Further, the Igoshins were not prohibited from practicing their faith. Id. at 182.

The record supports the BIA's conclusion that the mistreatment Mr. Igoshin suffered at the hands of the KGB was due to his failure to cooperate as a spy and

was not due to his religion. The missionaries were believed to be spies because they were American. Mr. Igoshin failed to establish "with the degree of clarity necessary to permit reversal of a BIA finding to the contrary" that he either was persecuted or has a well-founded fear of future persecution because of his religion, rather than because of his refusal to spy for the KGB. E.g., INS v. Elias-Zacarias , 502 U.S. 478, 483 (1992).

Because petitioners cannot establish their entitlement to asylum, they cannot satisfy the more stringent standard required for withholding of deportation. See Woldemeskel , 257 F.3d at 1193.

The petitions for review are DENIED.

Entered for the Court


Stephen H. Anderson
Circuit Judge