**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BERNA NAKITYO,

 Petitioner,

 v.

JOHN ASHCROFT,

 Respondent.

No. 02-9561

(BIA No. A76-948-280)

(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR**, **McWILLIAMS**, and **HARTZ**, Circuit Judges.

Petitioner Berna Nakityo is a native and citizen of Uganda. After coming

to the United States on a student visa to participate in an academic exchange

program in 1998, she applied for asylum and withholding of removal under the

Immigration and Nationality Act (the INA), 8 U.S.C. § 1101, *et seq*. She claimed

that if she returned home she would face persecution as a result of her chance

encounter with rebels during a scientific research trip in Uganda before her visit

to this country. An immigration judge (IJ) denied the application after a hearing

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

on February 20, 2001. The Board of Immigration Appeals (BIA) affirmed the IJ's decision without opinion on August 29, 2002. Petitioner appeals, contending that (1) the IJ erred in finding that she had no well-founded fear of future persecution, and thus did not qualify for asylum or withholding of removal; (2) the BIA erred in not applying 8 C.F.R. § 208.13(b)(1)(iii); and (3) the BIA violated Petitioner's due-process rights by issuing an affirmance without opinion under 8 C.F.R. § 1003.1(a)(7). We exercise jurisdiction under 8 U.S.C. §1252(a), *see Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003), and affirm.

## I. BACKGROUND

### A. Asylum and Withholding Law

"An alien who fears persecution if deported has two possible means of relief: asylum and withholding of deportation." *Tsevegmid*, 336 F.3d at 1234 (quoting *Nazaraghaie v. INS*, 102 F.3d 460, 462 (10th Cir. 1996)). The former is within the discretion of the Attorney General, while the latter is granted to qualified aliens as a matter of right. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 424 (1987).

Under § 208(b)(1) of the INA, 8 U.S.C. § 1158(b)(1), to be eligible for a discretionary grant of asylum by the Attorney General, the alien must establish her status as a refugee as defined in INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). *See Krastev v. INS*, 292 F.3d 1268, 1270 (10th Cir. 2002). The

pertinent part of the INA definition of a refugee is "any person . . . outside [her] country of . . . nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant can establish her status as a refugee by showing she either (1) "has a well-founded fear of future persecution," (2) "has suffered past persecution, which gives rise to a [rebuttable] presumption [of] a well-founded fear of future persecution," or (3) has suffered "past persecution so severe as to demonstrate compelling reasons for being unwilling or unable to return" to her country of nationality. *Krastev*, 292 F.3d at 1270–71 (internal brackets and quotation marks omitted). Aliens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and "an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear [of] . . . persecution." *Yuk v. Ashcroft*, No. 02-9546, 2004 U.S. App. LEXIS 781 at *29 (10th Cir. Jan. 20, 2004) (internal quotation marks omitted).

Applications for withholding of removal (now referred to as restriction on removal) are governed by § 241(b)(3) of the INA, which requires applicants to show that their "life or freedom would be threatened in [their home] country

-3-

because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). The Attorney General may not remove an alien if she is able to establish "a clear probability of persecution" in the country to which she would be returned. *Tsevegmid*, 336 F.3d at 1234. The standard of proof for withholding is "more demanding than the well-founded fear standard applicable to an asylum claim." *Id.* (internal quotation marks omitted). Thus, when applicants fail to establish the objective component of a well-founded fear of persecution, they necessarily fail to establish entitlement to withholding of removal. *See Batalova v. Ashcroft*, No. 02-9588, 2004 U.S. App. LEXIS 1055 at *24 (10th Cir., Jan. 23, 2004); *Yuk,* 2004 U.S. App. LEXIS 781 at *39 (holding that IJ correctly denied withholding of removal when "petitioners failed to meet the lower standard of showing entitlement to asylum").

## B. Factual Background

At a removal proceeding on July 20, 2000, Petitioner conceded removability but sought asylum and withholding of removal under the INA, and withholding under the Convention against Torture. (On appeal she does not address her claim under the Convention against Torture, so we need not consider it. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002).) Her hearing on the merits of her application was on February 20, 2001.

Petitioner's fear of persecution arose out of a botanical field trip in June 1998 to the mountains of the Ruwenzori district in western Uganda. Also on the trip were three fellow researchers from the university herbarium in Kampala and two field assistants hired in the mountains. During the trip they were approached by a group of men they believed to be anti-government rebels, who ordered them to leave the mountain region. The group retreated to a World Wildlife Fund camp in Fort Portal, Uganda. The members of the group were interrogated at the camp by persons Petitioner believed to be government officials. They were asked what they were doing in the area, given that there were known rebels there. According to Petitioner, the local people grew reluctant to work or speak with the research team, so the team decided to return to their university.

A few weeks after this trip, Petitioner received a student visa to study at Wesleyan University in Connecticut. The visa permitted her to remain in the United States until March 1, 1999. She arrived in the United States on August 29, 1998.

Petitioner testified that in January 1999, two months before she was due to return to Uganda, she received a telephone call from a member of her Ruwenzori research group, Margret Nakato. According to Petitioner's testimony and a letter from Ms. Nakato submitted into evidence, during that telephone call Ms. Nakato informed Petitioner that two of their colleagues from the group had been arrested

and were missing, and that their field assistants on the trip had been killed as suspected rebels along with other boys from Fort Portal. Petitioner testified that she stayed on in the United States after her scheduled departure date out of fear that she might be arrested or killed for being a suspected rebel should she return.

In support of her own testimony and Ms. Nakato's letter, Petitioner also submitted to the IJ (i) professional notices and publications verifying Petitioners' vocation as an herbologist; (ii) Amnesty International and Human Rights Watch reports on Uganda, detailing rebel activity and improper responses by government forces; (iii) a United States State Department country report on Uganda; and (iv) various news articles, including reports of widespread instability in Uganda as a whole, government reprisals against journalists who broadcast news of rebel activities in the Ruwenzori region, and rebel attacks and anti-rebel operations in the Ruwenzori region. News articles specifically regarding Fort Portal reported that bounties had been offered to the residents for turning in rebels, and that five unnamed teenage boys had been executed there as suspected rebels. At the hearing, however, Petitioner presented no evidence that anyone from the government had come looking for her in Kampala, where she had lived before leaving Uganda, or had approached her mother and children in Mukono, 18 kilometers from Kampala, where they continue to reside.

In his oral decision of February 20, 2001, the IJ said that Petitioner may have a subjective fear of persecution. But he did not find that she had established an objective basis for that fear, finding rather "that a reasonable person in the same situation would have no need to fear the Government." R. at 50. Accordingly, the IJ denied Petitioner's applications for asylum and withholding of removal, and granted her voluntary departure by April 23, 2001.

Petitioner timely appealed to the BIA. Under 8 C.F.R. §§ 1003.1(a)(7) & (e), the BIA assigned the case to a single board member who affirmed the IJ's decision without opinion on August 29, 2002. Petitioner now appeals to this court.

## II.  DISCUSSION

### A.  IJ's Factfinding

"Where . . . the BIA summarily affirms or adopts an immigration judge's decision, this court reviews the judge's analysis as if it were the BIA's." *Tsevegmid*, 336 F.3d at 1235. "We review the IJ's resolution of the initial refugee status question under a substantial evidence standard." *Yuk*, 2004 U.S. App. LEXIS 781 at *29. In other words, the IJ's adverse asylum decision "must be upheld if supported by reasonable, substantial and probative evidence on the record as a whole." *Krastev*, 292 F.3d at 1275. The decision should be reversed only when "a reasonable factfinder would have to conclude that the requisite fear

of persecution existed." *Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

The IJ was not persuaded that Petitioner faced an actual threat of persecution if she returned to Uganda. He pointed out that (1) she had not been politically active; (2) her encounter with the rebels was during a legitimate scientific research trip; (3) she was not harmed by the interrogators whom she believed to be government agents; (4) she left the region and the country without encountering any attempts to restrain her; (5) her family was not subsequently contacted by the government; (6) nothing connected the five boys reported killed in Fort Portal to the two field assistants; and (7) Petitioner provided no direct evidence of the arrest and disappearance of her two colleagues, even though, given the many human-rights organizations with a presence in Uganda (of which Petitioner submitted evidence), there would be newspaper and international reports as to what occurred "if two university scholars of good standing who were apolitical were taken into Government custody, and then were not heard from since." R. at 48.

The IJ's analysis of the record is a reasonable one. A reasonable factfinder would not be compelled to find that Petitioner's fear of persecution was objectively justified. We affirm the denial of Petitioner's asylum and withholding-of-removal claims.

**B. Failure to Apply Regulation**

Petitioner contends that the BIA erred in failing to consider whether Petitioner suffered "other serious harm" under 8 C.F.R. § 208.13(b)(1)(iii). The regulation, however, applies only to victims of *past persecution*. *See* 8 C.F.R. § 208.13(b)(1)(iii) ("An applicant described in paragraph b(1)(i) of this section . . . may be granted asylum . . . if . . . [t]he applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal[.]"); *id.* at § 208.13(b)(1) (defining "Past persecution"). Petitioner neither alleges nor shows that she was the victim of past persecution. There was no error in not applying the regulation.

**C. BIA Procedure**

Finally, Petitioner argues that the BIA's use of an affirmance without opinion violated constitutional guarantees of procedural due process. We must reject the argument.

We recently held that the streamlined BIA procedure prescribed by 8 C.F.R. § 1003.1(a)(7) does not violate procedural due process. *See Yuk*, 2004 U.S. App. LEXIS 781 at *26. As we explained in *Yuk*, even under the streamlined process, "petitioners receive[] a meaningful and thorough review of their claims, and, in the IJ's decision, they receive[] a reasoned explanation for the agency's decision,

-9-

which we can, in turn, review.  Due process . . . require[s] nothing more."  *Id.* at *25–26.

Petitioner further argues in support of her due-process claim that affirmance without opinion was improper in her particular case, because "there were new issues raised on appeal that had not been addressed in the court below." Aplt. Br. at 48.  We decline to consider this argument, however, because Petitioner does not identify in her brief what "new issues" were raised on appeal before the BIA.  *See Eateries Inc. v. J.R. Simplot Co.,* 346 F.3d 1225, 1232 (10th Cir. 2003) ("We need not sift through the record to find evidence to support a party's argument, nor manufacture a party's argument for it." (internal brackets and quotation marks omitted)).

## III.  CONCLUSION

We AFFIRM the BIA and IJ's decision denying Petitioner's application for asylum and withholding of removal.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

-10-