**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 7, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TODOR DIMITROV,

Petitioner,

v.

ALBERTO R. GONZALES, United
States Attorney General,   *

Respondent,

No. 04-9565

(United States Board of Immigration)

(Agency No. A78-751-646)

**ORDER AND JUDGMENT**   **

Before **KELLY** , **O'BRIEN** , and **TYMKOVICH** , Circuit Judges.   ***

    Petitioner Todor Dimitrov, a native and citizen of Bulgaria appearing pro

se, petitions for review of the Board of Immigration Appeals' (BIA) final order of

---

    * On February 4, 2005, Alberto R. Gonzales became United States Attorney
General. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, Mr. Gonzales is substituted for John Ashcroft as the Respondent in
this action.

    ** This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders; nevertheless, an order may be cited under the terms and
conditions of 10th Cir. R. 36.3.

    *** After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

removal. On May 4, 2004, the BIA affirmed without opinion an Immigration Judge's (IJ) denial of Dimitrov's application for asylum, restriction on removal and protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252(a) and deny the petition.

**Background**

Dimitrov entered the United States on March 6, 2001, without inspection, crossing the border between California and Mexico. He was subsequently apprehended by an Immigration and Naturalization Services (INS) Border Patrol Agent.[1] On March 7, 2001, the INS charged Dimitrov with being subject to removal as an alien present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

Dimitrov filed a motion to change venue from El Centro, California to Denver, Colorado. In his motion, Dimitrov admitted the factual allegations contained in the INS charge and conceded his removability. On December 4, 2001, Dimitrov applied for asylum, restriction on removal, and protection under the CAT, alleging persecution in Bulgaria on the basis of his Roma ethnicity and

---

[1] Effective March 1, 2003, the INS immigration enforcement functions were transferred to the Department of Homeland Security, the United States Immigration and Customs Enforcement. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). Because the INS started the removal proceedings in this case, we refer to it as the relevant agency.

membership in the Euro-Roma party.[2]  In his application for relief and in his testimony before the IJ, Dimitrov claimed he was denied educational and economic opportunities because of his Roma ethnicity, and that he suffered mistreatment at the hands of Bulgarian authorities.  Specifically, Dimitrov testified he was detained 30 or 40 times by the Bulgarian police and detailed the last two detentions, which allegedly occurred in January 2001.

Regarding the earlier of those January detentions, Dimitrov testified Bulgarian police detained him on January 1, accused him of theft, and brutally beat him after finding he carried a Euro-Roma membership card.  Dimitrov claimed he was again detained on January 16 and brutally beaten over a four-day period when he refused to confess to the earlier theft.  In addition, Dimitrov testified that after his release he went to a hospital and obtained a certificate confirming his injuries.  In support of this application, Dimitrov submitted as evidence the medical certificate and his alleged Euro-Roma membership card, which he claimed to have been carrying when detained by police in January 2001.

The IJ denied Dimitrov's application.  The IJ concluded Dimitrov's claims to be a Roma and a member of the Euro-Roma party were baseless for several

---

[2] Restriction on removal was known as "withholding on removal" prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.  *See Elzour v. Ashcroft*, 378 F.3d 1143, 1148 n.5 (10th Cir. 2004).  Though the IJ used the former term "withholding on removal," we use the newer terminology.

reasons. First, the IJ found "[u]pon observing the [Euro-Roma membership] card, it appears to the Court that the first two dues entries were written in the same pen and the same hand, it appears that they were written at the same time. It does not appear to the Court that this document could have been delivered to [Dimitrov] prior to his first apprehension by police on January 1, 2001." Second, the IJ judged Dimitrov's claim that he had carried the card since February 2000 incredible because Dimitrov "was not aware that on the face of the card, the card gives the slogan for the party as dignity, bread and equality."

More generally, the IJ determined Dimitrov's lack of knowledge regarding the Euro-Roma party's activities undermined his credibility. The IJ noted Dimitrov "testified that the Euro-Roma party is more of a festival organization or a cultural group" whereas the membership card "indicates quite clearly that the Euro-Roma is a 'political movement.'" In this regard, the IJ believed it "inconceivable" Dimitrov "could have been a card carrying member of the Euro-Roma party and not realize it had a very significant connection to the ruling coalition in Bulgaria." Finally, the IJ indicated the "Department of State alerts adjudicators of asylum claims to be careful in this area when adjudicating claims based on alleged Roma ethnicity." Consistent with these observations, the IJ concluded Dimitrov was "not a member of the Euro-Roma party" and not "of Roma ethnicity."

In addition, the IJ found the concerns about Dimitrov's credibility compounded by inconsistencies between his claim of being deprived of opportunity in Bulgaria and his statement to an immigration official that he was a teacher. Dimitrov testified that translation problems led the official to incorrectly list Dimitrov's occupation in Bulgaria as teacher when he had in fact said he was a seasonal worker who wanted to become a teacher. The IJ rejected this argument because the immigration document completed by the official was otherwise "remarkably accurate and detailed."

Finally, the IJ did not find the medical record submitted by Dimitrov to be credible because it did not contain any "indicia of authenticity" allowing the IJ to determine whether it was genuine. Having concluded Dimitrov failed to meet his burden of proof, the IJ ordered him removed to Bulgaria.

On May 4, 2004, the BIA adopted the IJ's findings and dismissed Dimitrov's appeal. He then filed the instant petition for review with the United States Court of Appeals for the Ninth Circuit. That court sua sponte transferred the petition to us.

**Discussion**

**1. Legal Standards**

An alien fearing persecution if removed from the United States has three possible forms of relief: asylum, restriction on removal under 8 U.S.C. § 1231, and protection under the CAT.[3]

*A. Asylum*

"An alien who has been granted asylum may not be deported or removed unless his or her asylum status is terminated." *Elzour v. Ashcroft*, 378 F.3d 1143, 1148 (10th Cir. 2004) (quoting 8 C.F.R. § 208.22). "To be eligible for asylum, an alien must be a 'refugee,' meaning that he or she must generally be outside his or her country of nationality and 'unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion.'" *Id.* at 1148–49 (quoting 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)). "As a general matter, once refugee status is established, whether to grant or deny an

---

[3] The Convention Against Torture is formally referred to as The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85. The United States implemented the CAT through the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681 (1998). *See Elzour v. Ashcroft*, 378 F.3d 1143, 1150 n.8 (10th Cir. 2004).

asylum application is within the discretion of the Attorney General." *Id.* at 1149

(citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)).

### B.  Restriction on Removal under 8 U.S.C. § 1231

"Generally speaking, an alien may not be removed to a particular country if

he or she can establish a clear probability of persecution in that country on the

basis of race, religion, nationality, membership in a particular social group, or

political opinion." *Elzour*, 378 F.3d at 1148 (citing 8 U.S.C. § 1231(b)(3)(A);

*INS v. Stevic*, 467 U.S. 407, 429–30 (1984); *Woldemeskel v. INS*, 257 F.3d 1185,

1193 (10th Cir. 2001)).  "This test requires the alien to show that such

persecution is more likely than not." *Id.* (citing *Stevic*, 467 U.S. at 429–30;

*Woldemeskel*, 257 F.3d at 1193).  "It is therefore more demanding than the 'well-

founded fear' standard applicable to an asylum claim." *Id.* (citation and further

internal quotations omitted).  "[U]nlike asylum, the decision to grant restriction

on removal is mandatory once the statutory criteria are satisfied." *Id.* at 1149–50

(citation omitted).

### C.  Convention Against Torture

The [CAT] provides another basis for restricting removal to a
particular country.  Pursuant to this treaty, an alien is entitled not to
be removed to a country if he or she can show that it is more likely
than not that he or she would be tortured if removed to that country.
8 C.F.R. § 208.16(c)(2), (4).  This protection is narrower than
restriction on removal under 8 U.S.C. § 1231 in some respects, but
broader in others.  The alien must show that the persecution at issue
would be so severe as to rise to the level of torture, but he or she

need not show that it would be on account of a protected classification.

*Elzour*, 378 F.3d at 1150 (footnote and further citations omitted).

### D. Principles of Judicial Review

Because the BIA summarily affirmed the IJ's decision without opinion, we review the IJ's order as the final agency determination. *We consider any legal questions de novo, and we review the agency's findings of fact under the substantial evidence standard. Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.*

*The IJ's credibility determinations, like other findings of fact, are subject to the substantial evidence test.* In particular, we have held that in order to determine that an alien is not a credible witness, the IJ must give specific, cogent reasons for disbelieving his or her testimony.

Finally, our review is confined to the reasoning given by the IJ, and we will not independently search the record for alternative bases to affirm. If an agency decides a case on a ground believed by an appellate court to be wrong, the case has to be remanded to the agency.

*Elzour*, 378 F.3d at 1150 (emphasis added) (footnote, citations and internal quotations omitted).

## 2. Dimitrov's Claims

On appeal, Dimitrov asserts the IJ's credibility decision is not supported by substantial evidence. Specifically, he contends the IJ failed to adequately take into account his testimony regarding the police beatings he allegedly suffered. In addition, he claims the IJ erred in finding his testimony regarding membership in

the Roma ethnic group and the Euro-Roma party incredible based on the contents of his Euro-Roma party card and his lack of knowledge regarding the party's slogan and political activities. Lastly, Dimitrov claims the IJ failed to consider that translation problems accounted for his statement that he was a teacher.

Having reviewed the record, we find substantial evidence supports the IJ's credibility determination because he provided "specific, cogent reasons for disbelieving [Dimitrov's] testimony." *Elzour*, 378 F.3d at 1150. To begin, the IJ considered and rejected Dimitrov's claim that the reference to being a teacher resulted from translation difficulties based on the accuracy of the remainder of the immigration document. The claim the IJ failed to take into account alleged translation problems is without merit.

Further, though Dimitrov is correct the IJ did not specifically find his account of alleged police beatings incredible, the IJ did otherwise articulate adequate grounds to deny the application. To be eligible for asylum or restriction on removal under 8 U.S.C. § 1231, Dimitrov had to establish not only a likelihood of persecution but also that the persecution would occur on the basis of a protected classification. Dimitrov argued he was a member of the Roma ethnicity and the Euro-Roma party. As described above, the IJ discounted these claims based on several grounds including Dimitrov's lack of knowledge regarding the Euro-Roma party. The reasons given are sufficient to support the IJ's conclusion,

and therefore the petition for review of the denial of asylum and restriction on withholding under 8 U.S.C. § 1231 is denied.

With respect to the CAT claim, Dimitrov did not need to show he is a member of a protected classification to be eligible for relief. However, the entirety of Dimitrov's argument was based on an assertion that he was beaten because he was a Roma and member of the Euro-Roma party. The IJ found Dimitrov was not a member of one of those groups and also determined Dimitrov's statement that he was a teacher undermined the entirety of his theory of persecution. These determinations were based on substantial evidence in the record and, taken together, support the IJ's conclusion Dimitrov failed to establish he would be tortured if returned to Bulgaria. Accordingly, the petition for review of the CAT claim is denied.

### Conclusion

For the foregoing reasons, we deny the petition for review.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge