**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SEYDOU DIA,

      Petitioner,

v.

ALBERTO R. GONZALES,   *

      Respondent.

No. 04-9569
(No. A 79-468-925)
(Petition for Review)

**ORDER AND JUDGMENT**   **

Before **HENRY** , **ANDERSON** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*      On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

**      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Seydou Dia, a native and citizen from the Republic of Congo, seeks review of a decision of the Board of Immigration Appeals (BIA) dismissing his appeal from an immigration judge's (IJ) denial of his application for asylum and restriction on removal.   We exercise jurisdiction pursuant to 8 U.S.C. § 1252(a) and we deny the petition for review.

BACKGROUND

Petitioner entered the United States illegally and timely applied for asylum, restriction on removal, and relief under the Convention Against Torture (CAT). He claimed past persecution and a fear of future persecution based on his imputed political opinion.  He stated that his uncle on his mother's side was Bernard Kolelas, a former prime minister of Congo and a key political opponent of the Congo government during the country's civil war in the late 1990s.  The asylum officer found petitioner ineligible for asylum and referred his application to an immigration judge (IJ).

*The Initial IJ Determination*  .  The IJ held a hearing   at which petitioner testified that he and his father were apolitical, but his mother, who he claimed was Kolelas's sister, was involved in politics.  Petitioner testified that his father's store was invaded by militants during the civil war, during which he and his mother were threatened with guns and badly beaten.  He claimed his wounds became infected, requiring surgery.  He testified another uncle was killed by a

-2-

paramilitary group, the Cobras, that supports the current leader of Congo, and that he had been beaten many times by the Cobras. Petitioner left Congo for Gabon and stated he later heard that his father had been assassinated.

The IJ denied petitioner's asylum application, finding that petitioner's claims of persecution were not credible. T he IJ concluded that petitioner misrepresented his relationship with Kolelas. The IJ first noted that the copy of petitioner's birth certificate had apparent irregularities: the given name of the child appeared to be in different script than the remainder of the document, and that the surname of the child did not match the father's name. The IJ concluded, therefore, that the birth certificate was not good evidence of petitioner's identity. Petitioner did not have any other identification, claiming that he purposely lost all of his identity cards after he left the Congo to avoid detection. The IJ found this explanation "nonsensical," because petitioner kept his identity cards while he lived in Congo and kept his birth certificate. The IJ also noted that petitioner was unaware that Kolelas had publicly and prominently been convicted and sentenced to death in absentia for crimes committed during Congo's civil war, and is now living in exile. The IJ found it inconceivable that petitioner would not have been aware of this information if Kolelas was his uncle.

Next, the IJ noted that petitioner's asylum application did not mention any of the beatings that he or his mother allegedly received, nor his father's

assassination. The IJ rejected p etitioner's claim that there was insufficient room on the application to include this information. The IJ noted that the application form specifically asked whether petitioner or any family member had ever been mistreated, indicated that the applicant should attach additional pages if needed, and had room for more information than petitioner provided. The IJ found that petitioner's failure to mention the alleged mistreatment on his application was a serious and substantial omission creating an inconsistency between his original written application and his oral testimony at the hearing. The IJ determined that petitioner's testimony was insufficient to establish his claim for asylum, restriction on removal or relief under the CAT.

Petitioner appealed to the Board of Immigration Appeals (BIA). There were gaps in the hearing transcripts, however, because portions of two hearing tapes were inaudible. Thus, the BIA remanded the case for further proceedings. The IJ held a second hearing, allowing petitioner to present any additional information or documents. The IJ denied petitioner's request to exclude the record of the initial hearing, finding that the great majority of the initial hearing was properly recorded and transcribed.

*The Second IJ Determination.* At the second hearing, petitioner provided new testimony and new evidence. He no longer claimed that Kolelas was his mother's brother, only that his mother had told him to call Kolelas "uncle." He

submitted an affidavit from a professor explaining that the term "uncle" is used by Africans as an honorific term to describe all older male relatives as well as older men not related by blood. He also submitted photographs of a scar on his abdomen, which he claimed was from the post-beating surgery. He stated he had not reported the scar earlier because he also lost a testicle during the surgery and was embarrassed. He further testified he did not include this information on his asylum application because he planned to explain the injury when he was interviewed by the asylum officer.

The asylum officer who interviewed petitioner appeared at this second hearing. Her notes of the interview with petitioner state that "applicant claimed he was not harmed during a looting of his parent's shop." R. at 374. She testified that she invariably asks an asylum applicant about any harm he or she may have suffered and that petitioner had never mentioned during the asylum interview that he had ever been physically harmed or suffered any injuries.

The IJ again denied asylum for the same reasons stated in his original decision. In addition, the IJ found that petitioner's new testimony about his injury was inconsistent with his initial asylum claim and was not supportive of his credibility. In particular, the IJ noted that petitioner testified he did not mention his beating or injury on his asylum application because he planned to provide this

information to the asylum officer, yet he did not do so. The IJ found that petitioner had not established past persecution.

The IJ also found the record was insufficient to demonstrate a well-founded fear of future persecution. The IJ noted that recent State Department reports indicated that the human rights conditions in Congo had improved, that prominent associates of Kolelas had been permitted to return to their jobs, and that the current government of Congo had signed laws and implemented regulations granting amnesty for acts committed during the civil war. Given petitioner's failure to show past persecution and his less-than-significant contact with Kolelas, the IJ found it unlikely petitioner could have a reasonable fear of future persecution.

Accordingly, the IJ concluded that petitioner did not meet his burden to show he was a refugee and denied the application. The BIA summarily affirmed the IJ's decision.

ANALYSIS

An asylum applicant first has the burden of proving his eligibility for asylum by establishing that he is a refugee as defined in 8 U.S.C. § 1101(a)(42). *Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10th Cir. 2004). An asylum applicant can establish refugee status by demonstrating (1) a well-founded fear of future persecution; (2) that he has suffered past persecution, which gives rise to a

rebuttable presumption that he has a well-founded fear of future persecution; or (3) past persecution "so severe that it demonstrates compelling reasons for being unwilling to return," which is known as humanitarian asylum. *Id*. at 1232-33 (quotation omitted); *see also* 8 C.F.R. § 208.13(b)(1)(iii)(A). If the applicant establishes refugee status, the Attorney General exercises discretionary judgment in either granting or denying asylum. *Yuk*, 355 F.3d at 1233.

When, as here, the BIA summarily affirms an IJ's order, we review the IJ's order as the final agency determination. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). We review the IJ's legal determinations de novo, and his findings of fact under a substantial-evidence standard. *Id*. We must uphold the IJ's determination that petitioner is not eligible for asylum if the record considered as a whole contains reasonable, substantial, and probative evidence to support that determination. *Id.* Reversal is appropriate only if the evidence presented by the petitioner was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed. *Id*.

We do not weigh the evidence or evaluate the credibility of witnesses. *Yuk*, 355 F.3d at 1233. An IJ must give specific, cogent reasons for his credibility determinations. *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004). However, an IJ's finding that a witness is not credible is a finding of fact that is conclusive unless the record demonstrates that any reasonable adjudicator would

-7-

be compelled to conclude to the contrary. *See Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003). Accordingly, we will not question the IJ's credibility determinations as long as they are substantially reasonable. *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001).

Here, the IJ determined as a matter of fact that petitioner was not a credible witness and he provided specific, cogent reasons for his credibility assessment. *Sviridov*, 358 F.3d at 727. In his petition for review, petitioner disagrees with the IJ's credibility determination and maintains that his testimony was truthful. We conclude that the record supports the IJ's conclusion that petitioner made inconsistent statements over time to bolster his arguments for asylum. We further conclude that the IJ did give specific, cogent reasons for disbelieving petitioner's testimony. Because the IJ gave specific, cogent reasons for disbelieving petitioner's testimony, and those reasons are supported by substantial evidence, we must uphold the IJ's credibility finding. *Elzour*, 378 F.3d at 1152.

Petitioner also contends that the IJ did not make specific findings with respect to his conclusion that petitioner failed to establish a well-founded fear of future persecution. To the contrary, the IJ made specific findings in this regard, which are supported by the record. Petitioner failed to provide sufficiently credible testimony of past persecution to raise a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1). He bore the

burden of proof in the removal proceedings and he failed to establish that he is a refugee. Petitioner is, therefore, ineligible for asylum.

Because petitioner cannot establish that he is entitled to asylum, he cannot satisfy the more stringent standards required for restriction on removal, *Woldemeskel*, 257 F.3d at 1193, nor has he demonstrated a likelihood that he would be tortured if removed to Congo, which must be shown to establish entitlement to protection under the CAT, *see* 8 C.F.R. § 208.16(c)(2).

The petition for review is DENIED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge