**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ANDRI BASTIAN,

   Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

   Respondent.

No. 05-9539
(No. A96-423-878)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

  Petitioner Andri Bastian, a native and citizen of Indonesia, seeks review of

a final order of removal issued by the Bureau of Immigration Appeals (BIA).

Specifically, Mr. Bastian is appealing the decision of the Immigration Judge (IJ)

denying his application for asylum based on his Chinese ethnicity and his

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Christian religion.[1]  We dismiss Mr. Bastian's petition for review for lack of

jurisdiction insofar as it relates to his time-barred ethnicity claim and deny the

petition on the merits as it relates to his more recently accrued religion claim.

## I. Asylum Claim Based On Chinese Ethnicity.

Congress has imposed a one-year limitations period on the filing of

applications for asylum.  8 U.S.C. § 1158(a)(2)(B).  The one-year filing period

commences either on the date of the alien's last arrival in the United States or on

April 1, 1997, whichever is later.  8 C.F.R. § 208.4(a)(2)(ii).  An asylum

application that is filed outside of the one-year limitations period may,

nevertheless, be considered if the applicant shows "changed circumstances

which materially affect the applicant's eligibility for asylum."  8 U.S.C.

§ 1158(a)(2)(D).  Under the asylum statute, however, we "do not have

'jurisdiction to review any determination' on whether the alien filed his

application within a year of entry or whether 'changed circumstances' exist

'which materially affect the applicant's eligibility for asylum.'"  *Tsevegmid v.*

*Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003) (quoting 8 U.S.C. §§ 1158(a)(3)

and (a)(2)(D)).

---

[1]     The IJ also denied Mr. Bastian's applications for: (1) restriction on removal
under 8 U.S.C. § 1231(b)(3); and (2) withholding of removal under the
Convention Against Torture, *see* 8 C.F.R. § 208.16(c).  Mr. Bastian has not made
any arguments in this appeal challenging the IJ's rulings with regard to these
applications.  As a result, he has waived all issues relating to them.  *See Krastev
v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002).

It is undisputed that Mr. Bastian is of Chinese ethnicity, and he claims that "[a]s an ethnic Chinese Indonesian, . . . he was often mistreated and discriminated against" during the time that he lived in Indonesia. Pet. Br. at 5. Mr. Bastian also claims that he has a well-founded fear of future persecution in Indonesia based on his Chinese ethnicity should he be forced to return there. The threshold question here, however, is whether the IJ determined that Mr. Bastian's asylum claim is barred by the one-year limitations period in § 1158(a)(2)(B) to the extent that it is based on his Chinese ethnicity.

Because it is undisputed that Mr. Bastian arrived in the United States prior to April 1, 1997, Mr. Bastian was required to file his asylum application by April 1, 1998. *See* 8 C.F.R. § 208.4(a)(2)(ii). Mr. Bastian did not file his asylum application until September 30, 2003, however, and his application was therefore untimely unless there existed "changed circumstances which materially affect[ed] his] eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D).

Although the IJ's decision is somewhat difficult to follow due to the fact that the IJ also addressed the merits of Mr. Bastian's ethnicity claim, *see* Admin. R. at 37-38, we conclude that the IJ determined that Mr. Bastian's asylum claim was barred by the one-year limitations period to the extent that it is based on his Chinese ethnicity, *id.* at 38 (stating that Mr. Bastian "fail[ed] to timely pursue" his ethnicity claim). In addition, we note that, in contrast to his religion claim, there is no indication in the administrative record that Mr. Bastian has ever

claimed that there existed changed circumstances which affected his eligibility for asylum based on his Chinese ethnicity.

Finally, the IJ's determination of the timeliness issue was not affected by the BIA's per curiam order adopting and affirming the IJ's decision, as the BIA stated that its conclusions "coincide with those which the [IJ] articulated in his . . . decision." *Id.* at 2 (quoting *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994)). Accordingly, because the BIA affirmed the IJ's determination that Mr. Bastian's ethnicity claim was time-barred, we have no jurisdiction to review that aspect of his asylum claim, and that part of Mr. Bastian's petition for review must be dismissed.[2]

---

[2] On May 11, 2005, the REAL ID Act of 2005 took effect. Among its other provisions, the REAL ID Act provides that "[n]othing in . . . any . . . provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). This case raises an issue as to whether the REAL ID Act's grant of jurisdiction to review "questions of law" has any impact on the jurisdictional bar in 8 U.S.C. § 1158(a)(3). Under the circumstances of this case, we conclude that it does not, as we are dealing here with factual determinations, and we recently held that the term "questions of law" as used in § 1252(a)(2)(D) refers only to a narrow category of issues regarding statutory construction. *See Diallo v. Gonzales*, 447 F.3d 1274, 1282 (10th Cir. 2006).

**II. Asylum Claim Based On Christian Religion.**

The IJ appears to have found Mr. Bastian's application for asylum based on religion to be timely because of a changed circumstance. *See* Admin. R. at 37. The changed circumstance is Mr. Bastian's conversion to Christianity, as evidenced by his baptism on September 14, 2003. *Id.* at 35-37. Although the opinion of the IJ is not entirely clear on the point, he seems to have assumed arguendo that there was a changed circumstance, which meant that Mr. Bastian's religion claim was not time-barred, *id.* at 37, and thus addressed the merits of the claim. As a result, we have jurisdiction to review Mr. Bastian's application for asylum to evade religious persecution in Indonesia.[3]

We review the IJ's decision under a "substantial evidence standard," *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004), asking whether the decision was "supported by reasonable, substantial and probative evidence on the record as a whole." *Krastev v. INS*, 292 F.3d 1268, 1275 (10th Cir. 2002). The applicant for asylum "has the burden to prove his or her statutory eligibility for asylum by establishing that he or she is a 'refugee.'" *Krastev*, 292 F.3d at 1270. A "refugee" is defined as any person who is outside the country of that person's

---

[3]     We note in passing the wisdom of the IJ's decision to assume the changed circumstance and address the merits of the claim. For a judge to decide the timing of a religious conversion—specifically, in this case, to decide whether Mr. Bastian had been a Christian for many years, or a few years, or had become one at or near the time of his baptism—is to take a position on controverted questions of religious doctrine that are not properly resolved by federal courts.

nationality "who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Under the controlling regulations, an applicant for asylum may thus qualify as a refugee "either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." 8 C.F.R. § 208.13(b). The persecution "must be imposed by the government or by groups which the government is unwilling or unable to control." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (quotation omitted).

To establish a well-founded fear of future persecution, Mr. Bastian was required to prove either: (1) that he "would be singled out personally for persecution" if he returned to Indonesia; or (2) that he had "a reasonable fear of persecution because of [his] membership in a group subject to a pattern or practice of persecution." *Woldemeskel v. INS*, 257 F.3d 1185, 1190 (10th Cir. 2001) (quotation omitted); *see also* 8 C.F.R. § 208.13(b)(2)(iii)(A)-(B). "A pattern or practice of persecution has been defined as something on the order of organized or systematic or pervasive persecution." *Woldemeskel*, 257 F.3d at 1191 (quotation omitted).

In the present case, the IJ denied Mr. Bastian's religious asylum claim because anti-Christian violence in Indonesia appears to be decreasing and is not

-6-

concentrated in the area in which Mr. Bastian has lived and to which he would presumably return:

> With regard to respondent's religious conversion, the Court would note that the background materials and background information submitted confirm that there continues to be violence directed at the Christian community residing in Indonesia. However, this is not a situation which apparently exists nationwide. Looking at the information in the State Department reports, the attacks against the churches not only have declined in frequency in recent years, but they occur in outlying areas and outlying islands, and do not seem to be in existence or prevalent in Jakarta, where respondent had resided prior to coming to the United States and where his family continues to reside. Though there is a strong Islamic fundamentalist movement in Indonesia, efforts to impose Sharia law nationally have not been successful . . . .

Admin. R. at 38. Although the IJ did not specifically address Mr. Bastian's refugee status, these findings are tantamount to a determination that Mr. Bastian failed to establish a well-founded fear of future persecution based on his Christian religion. And only future persecution is before us, because no evidence suggests that Mr. Bastian has previously been persecuted in Indonesia as a Christian.

Having reviewed the administrative record and, in particular, the State Department's Country Report for Indonesia for 2002, *id.* at 265, we conclude that the IJ's finding that Mr. Bastian does not have a well-founded fear of future persecution based on his Christian religion is supported by substantial evidence in the administrative record. As the IJ found, while there continues to be violence in Indonesia directed at the Christian community from various Muslim groups, the violence has been decreasing due to the government's attempts to quell it, and, for

-7-

the most part, the violence has been concentrated in the outlying eastern provinces of Maluku, North Maluku, and Central Sulawesi. (We also note that the State Department's most recent reports, the Country Report on Human Rights Practices 2005 and the International Religious Freedom Report 2005, suggest that the violence has continued to abate and remains concentrated in the areas mentioned.) The record therefore supports the IJ's conclusion that Mr. Bastian would not be singled out individually for persecution and would not face a pattern or practice of persecution based on his Christian religion if he were to return to the capital city of Jakarta, the city where he resided for nine years prior to departing for the United States.

Finally, we need not decide whether Chinese or Christian residents of Indonesia are a "disfavored group" who can establish refugee status based on a "comparatively low" level of individualized risk of future persecution. *See Sael v. Ashcroft*, 386 F.3d 922, 925-29 (9th Cir. 2004); *but see Lie v. Ashcroft*, 396 F.3d 530, 538 n.4 (3d Cir. 2005) (rejecting the Ninth Circuit's lower standard for future persecution of members of "disfavored groups"). As discussed above, we have no jurisdiction over Mr. Bastian's claim to asylum on the basis of Chinese ethnicity. And, even if we did adopt the Ninth Circuit's lower standard for "disfavored groups" and chose to apply it to Christians or Chinese Christians in Indonesia, Mr. Bastian has not shown that he, "in particular, is likely to be targeted as a member of that group." *Sael*, 386 F.3d at 925. The "personal

connection to the general persecution" that was abundantly present in *Sael*, 386 F.3d at 929, is lacking in this case. We thus have no occasion to accept or reject the "disfavored groups" approach of *Sael*.

The petition for review is **DISMISSED** as to Mr. Bastian's claim that he is entitled to asylum based on his Chinese ethnicity. The petition for review is **DENIED** as to Mr. Bastian's claim that he is entitled to asylum based on his Christian religion.

Entered for the Court

Michael W. McConnell
Circuit Judge