**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 14, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HOBBY DUBEL MART,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

Respondent.

No. 06-9548
(No. A97 192 065)
(Petition for Review)

**ORDER AND JUDGMENT**\*

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

In this petition for review, Hobby Dubel Mart challenges a Board of

Immigration Appeals (BIA) decision denying his request for restriction on

removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3).[1]

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     Mart also filed an application for asylum and requested relief under the
United Nations Convention Against Torture, but he does not challenge the BIA's
decision as to those claims.

Because we conclude that substantial evidence supports the BIA's decision, we exercise our jurisdiction under 8 U.S.C. § 1252 to deny the petition.

I.

Mart is an Indonesian citizen and practicing Christian who claims that he will be persecuted on account of his religious beliefs if he is returned to Indonesia. According to his testimony, he was born in a small village on the island of Sumatra, and moved to the capital city of Jakarta when he was in the second grade. He claims that as a child, his fellow classmates, who were predominantly Muslim, frequently taunted him because of his religious beliefs. In high school, an angry mob of Muslims gathered outside the church where he was attending confirmation class and threw rocks, causing damage to the building and terrorizing those inside. He also testified that other members of his family have been persecuted on account of their Christian faith and he submitted evidence detailing his sister's narrow escape from a 1999 raid on her Protestant school perpetrated by Muslims.

Mart testified that he left Indonesia in 1999 to escape religious persecution. He was hired by an American cruise line and went to work on a ship that traveled between Fort Lauderdale and the Bahamas. Although the ship docked in Florida more than fifty times during Mart's employment, he did not apply for asylum until February of 2003, more than two years after his first arrival in the United States.

An Immigration Judge (IJ) denied Mart's asylum application because it was not filed within one year of Mart's arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B). Nonetheless, the IJ concluded that the merits of the application did not warrant a grant of asylum. The IJ believed that Mart had been harassed on account of his Christianity, but found there was no showing of past persecution or a well-founded fear of future persecution within the meaning of the Immigration and Nationality Act. Mart does not challenge the IJ's finding concerning past persecution. Accordingly, our review is limited to his claim that he faces future persecution and the reasons why that claim was rejected.

In his oral decision, the IJ conceded that Christians in Indonesia face what he described as "not an ideal situation." R. at 49. But he felt that circumstances in Indonesia are improving. He also explained that in order to grant asylum, "there must be a showing of a threat of persecution . . . countrywide," *id.* at 50, and he concluded that Mart had failed to make such a showing. Having found that Mart "failed to satisfy the lower burden of proof required for asylum," *id.* at 50-51, the IJ concluded that Mart's application necessarily fell short of the higher standard applicable to restriction on removal.

The BIA affirmed the IJ's opinion, specifically agreeing that Mart had "failed to establish a clear probability of persecution if returned to Indonesia." *Id.* at 2. It also made several additional findings that bolstered this conclusion.

> The respondent did not present sufficient evidence that anyone has a current interest in him on account of a protected ground. The respondent did not adequately establish that the Indonesian government is unable or unwilling to control the Muslim extremists as the respondent acknowledged that the police came to his church when extremists threw rocks at his church and guarded the church for two weeks. Nor did the respondent demonstrate that he could not relocate to another part of Indonesia to avoid future persecution. . . . Also, the record reflects that the respondent's parents and siblings have remained in Indonesia and have been able to live and worship there.

*Id.* at 2-3 (citations omitted).

Mart raises several challenges to the opinions of both the IJ and the BIA. First, he argues that the BIA applied an incorrect standard in asking whether he would be singled out for persecution, because under 8 C.F.R. § 1208.16(b)(2), he need only demonstrate that he would be subjected to a "pattern or practice of persecution." Next, he argues that the evidence in the record, including the story of the attack on his sister's Protestant school, shows that the Indonesian government is either unable or unwilling to control the increasingly violent Islamic fundamentalists. Finally, he claims that the IJ wrongly placed the burden on him to demonstrate the infeasibility of internal relocation. He argues that under 8 C.F.R. § 1208.16(b)(2), the IJ was required to designate an area within Indonesia where he could safely relocate.

## II.

Before addressing Mart's arguments, we note that in a case like this, involving a brief order issued by a single BIA member under 8 C.F.R.

-4-

§ 1003.1(e)(5) as opposed to a summary affirmance under (e)(4), "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We may consult the IJ's more complete explanation of grounds relied on by the BIA, and we may also look to the IJ's opinion if the BIA's reasoning is difficult to discern. But if the BIA's opinion "contains a discernible substantive discussion, . . . our review extends no further, unless it explicitly incorporates or references an expanded version of the same reasoning below." *Id.* Because the BIA's opinion in this case contains a clear explanation of the grounds for its decision, we need not consult the IJ's opinion.

We are ever mindful of the substantial deference to be accorded the BIA's decision. We may not reverse the BIA unless we find that the evidence not only supports, but compels a different conclusion. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). In reviewing the BIA's decision,

> [w]e consider any legal questions de novo, and we review the agency's findings of fact under the substantial evidence standard. Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.

*Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

Restriction on removal, previously called withholding of removal, prohibits the removal of "an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the

alien's . . . religion." 8 U.S.C. § 1231(b)(3)(A). "In order to demonstrate eligibility for [restriction on removal], the applicant must establish a clear probability of persecution through presentation of evidence establishing that it is more likely than not that the applicant would be subject to persecution." *Woldemeskel v. I.N.S.*, 257 F.3d 1185, 1193 (10th Cir. 2001) (quotation and alteration omitted). Under this test, Mart must show that he has a greater than fifty-percent chance of being persecuted upon his return to Indonesia. *Cf. Kamara v. Attorney Gen.*, 420 F.3d 202, 213-14 (3d Cir. 2005) (holding that the "more likely than not" standard applicable to Convention Against Torture claims is met if the probability of torture exceeds fifty percent); *Wang v. Ashcroft*, 320 F.3d 130, 144, n.20 (2d Cir. 2003) (same).

Based on our careful review of the record, we cannot say that the evidence compels a finding that Mart faces more than a fifty-percent chance of being persecuted if returned to Indonesia. He argues that in contravention of its own regulations, the BIA erroneously required him to prove that he would be singled out for persecution.[2] The applicable regulation clearly provides that a showing of

---

[2] 8 C.F.R. § 1208.16(b)(2)(i) provides in relevant part,

[a]n applicant who has not suffered past persecution may demonstrate that his or her life or freedom would be threatened in the future in a country if he or she can establish that it is more likely than not that he or she would be persecuted on account of . . . religion . . . upon removal to that country. . . . In evaluating whether it is more likely than not that the applicant's life or freedom would

(continued...)

individualized harm is not always required to establish a clear probability of future persecution. But it is also clear that the applicant's burden to show that he would be singled out for persecution is only alleviated "*if* . . . [t]he applicant establishes . . . a pattern or practice of persecution." 8 C.F.R. § 1208.16(b)(2)(i) (emphasis added). This, we have explained, entails "something on the order of organized or systematic or pervasive persecution." *Woldemeskel*, 257 F.3d at 1191 (quotation omitted). The background information that Mart submitted certainly confirms that deplorable acts of violence and discrimination are directed at the Christian community throughout Indonesia. But the record also shows that the government has not abandoned its efforts to stop the violence and continues to investigate the perpetrators. Importantly, the evidence simply does not support the conclusion that Christians in Indonesia suffer organized, systematic, or pervasive persecution. While the attack on Mart's sister's school more than seven years ago may not have been aberrational, we remain unconvinced on the record before us that it is more likely than not that he too will be targeted because of his faith. And there is certainly nothing in the record to indicate that Mart will be singled out for persecution based on any other reason. To the contrary,

---

[2](...continued)

> be threatened . . . , the asylum officer or immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for such persecution if: (i) The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of . . . religion.

substantial evidence supports the BIA's conclusion that Mart failed to establish a clear probability of persecution.[3] We are therefore bound to uphold its decision.

The petition for review is DENIED.

Entered for the Court


Bobby R. Baldock
Circuit Judge

---

[3] Since we conclude that there is no clear probability of persecution, we need not address Mart's argument concerning the feasibility of internal relocation.