**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DANI ADRIAN and EVI SARLITA
SIHOMPING,

　　　　Petitioners,

　　v.

ALBERTO GONZALES, United
States Attorney General,

　　　　Respondent.

No. 06-9597

(Agency Nos. A97 186 475/476)

(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

---

Petitioners Dani Adrian and Evi Sarlita Sihomping, both citizens of

Indonesia, seek review of a decision of the Bureau of Immigration Appeals (BIA)

affirming the immigration judge's (IJ) decision denying their applications for

asylum and withholding of removal. Exercising jurisdiction under 8 U.S.C. §

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

1252(a)(1), we deny the petition for review because we agree that petitioners have not met their burden of showing past persecution or a credible threat of future persecution in Indonesia.

## I. Background

Petitioners are natives and citizens of Indonesia. Mr. Adrian was admitted to the United States on November 26, 1999 as a non-immigrant visitor with authorization to remain until December 25, 1999. Ms. Sihomping was admitted to the United States on July 21, 2001 as a non-immigrant visitor with authorization to remain until January 21, 2002. Both remained in the United States beyond their authorized stays. Petitioners met and were married in the United States and have one daughter, who is a United States citizen.

Petitioners are both Christians who claim to have suffered past persecution by Indonesian Muslims on account of their religious faith. Mr. Adrian submitted an application for asylum to the Department of Homeland Security (DHS) on March 4, 2003, and included Ms. Sihomping as a derivative relative. DHS denied the application because Petitioners failed to seek asylum within the first year of their arrival in the United States as required by statute and, instead, ordered Petitioners to appear before the Denver Immigration Court for removal proceedings.

*Removal Proceedings*. DHS charged both Petitioners as removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted.

At a hearing on September 30, 2003, Petitioners conceded proper service of the Notices to Appear, admitted to the factual allegations contained therein, and conceded removability as charged. As relief from removal, Petitioners renewed the application for asylum, and also sought withholding of removal, protection under the Convention against Torture (CAT) and voluntary departure.

Petitioners testified in support of their applications at a merits hearing on October 20, 2005. Mr. Adrian testified that, during his childhood, his family were the only Christians in the community and Muslims discriminated against him, calling him "infidel" and other names. He also testified that someone from a neighboring military complex shot and killed his dog. On June 27, 1986, Mr. Adrian was in the parking lot of a restaurant when six men attacked and beat him. One allegedly held up a knife and threatened to kill Mr. Adrian. When he asked why they were attacking him, they said "because you are Chinese!" A.R. 92, 253. The men apparently departed after Mr. Adrian assured them he was not Chinese. Mr. Adrian did not require hospitalization after the attack.

Ms. Sihomping, in turn, testified that she was traumatized when she witnessed a police station being burned and cars overturned during a riot which broke out as she was riding a city bus in 1998. During the incident, her bag was stolen and she was forced to walk seven miles home. She claims another terrifying experience on December 24, 2000, when she learned that the church where she was planning to attend services that evening had been bombed.

Petitioners' daughter was born in the United States in November 2002. Mr. Adrian testified that he especially feared she would be targeted by radical Muslims if the family was forced to return to Indonesia.

*Decision of the Immigration Judge.* On October 20, 2005, the IJ rendered an oral decision denying Petitioners' requests for relief from removal. He reiterated that on the basis of the evidence of record, Petitioners had overstayed their visas and were subject to removal as charged. The IJ further found that Mr. Adrian did not qualify for asylum because he did not show that he was excused from filing his application within one year of his arrival in the United States, specifically concluding that Mr. Adrian's asserted defense of a lack of knowledge regarding the asylum process did not constitute an "extraordinary circumstance" that could excuse untimely filing. A.R. at 62–63.

The IJ further found that Petitioners did not qualify for withholding of removal because they did not sustain their burden of showing that it was more likely than not that they would be persecuted in Indonesia because of their Christian faith. Finally, the IJ denied Petitioners' protection under the CAT on the basis of his view that they had not established that it was more likely than not they would be tortured by, or with the acquiescence of, the Indonesian government. As a result, the IJ denied Petitioners' applications for relief and ordered them removed to Indonesia with an alternative grant of voluntary departure.

The BIA affirmed the decision of the IJ on November 28, 2006, and this appeal followed.

## II. Discussion

We review the BIA's legal conclusions de novo, and any factual findings for substantial evidence. Under the substantial evidence test, "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006).

### A. Asylum

This court's jurisdiction to review determinations related to the timeliness of an asylum application after a final order of removal has been entered is limited to constitutional claims and questions of law. *See* 8 U.S.C. § 1158(a)(3); *Diallo*, 447 F.3d at 1281. Here, Petitioners entered the United States in 1999 and 2001, respectively, but did not file for asylum until 2003. The IJ found, and the BIA agreed, that Petitioners' asylum application was untimely, without any extraordinary circumstances justifying their failure to file within the statutory period of one year.

Petitioners concede on appeal that their asylum application was untimely, and do not attempt to identify any constitutional claims or legal questions germane to the timeliness of their application." We therefore turn to the BIA's denial of their application for withholding of removal.

-5-

**B. Withholding of Removal**

To be eligible for withholding of removal, an alien must show that it is more likely than not that his life or freedom would be threatened by persecution in the country of removal on account of his race, religion, nationality, membership in a particular social group, or political affiliation. 8 U.S.C. § 1231(b)(3)(A); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005). An alien satisfies this burden by showing that he suffered *past* persecution on account of any of these five enumerated factors, 8 C.F.R. § 1208.16(b)(1), *or* by showing that it is "more likely than not" that he will suffer *future* persecution if returned to the country of removal, *INS v. Stevic*, 467 U.S. 407, 429–30 (1984); 8 C.F.R. § 1208.16(b)(2).

*1. Petitioners failed to establish past persecution*

Petitioners' separate claims of past persecution were based on the following incidents: (1) the 1986 attack on Mr. Adrian purportedly because of his Chinese appearance; (2) the killing of Mr. Adrian's childhood dog; (3) discrimination and name-calling endured by Mr. Adrian as a child; (4) the bombing of a church Ms. Sihomping was planning to attend on December 24, 2000; and (5) Ms. Sihomping's witnessing of a riot in 1998. A.R. at 92–94, 105–08, 253–54.

"Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Chaib v. Ashcroft*,

397 F.3d 1273, 1277 (10th Cir. 2005) (internal quotation omitted).  It is "an extreme concept that does not include every sort of treatment our society regards as offensive." *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) (internal quotation omitted).  "Persecution may be found by cumulative, specific instances of violence and harassment," *id.*, but "generalized lawlessness and violence between diverse populations" is generally insufficient to satisfy the standard, *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998).

Here, Petitioners have not experienced treatment that rises to the level of past persecution.  Mr. Adrian's solitary assault in 1986, though unfortunate, does not rise to the level of persecution.  *See Kapcia v. INS*, 944 F.2d 702, 704–05, 708 (10th Cir. 1991) (sustaining finding of no past persecution where aliens were detained and beaten in home country on multiple occasions).  Moreover, while Mr. Adrian's claim to future persecution is based on his Christian faith, he testified that he was beaten because of his alleged resemblance to an ethnically Chinese person.  Pet. Brief at 9.  The beating in 1986 cannot, therefore, rationally support his fear of persecution based on the fact that he is a Christian.  Ms. Sihomping's position is similarly unpersuasive.  The single incidence of violence between Christians and Muslims in Indonesia which she observed was generalized and had little direct impact on her.  The fact that the riots she witnessed and church bombing she heard about caused her anxiety is not sufficient to establish past persecution.

These incidents, whether considered individually or together, cannot establish past persecution. Therefore, the IJ properly required petitioners to show that it would be "more likely than not" that they will suffer future persecution if returned to Indonesia.

*2. Petitioners failed to establish it was "more likely than not" they would suffer future persecution*

Because Petitioners did not suffer past persecution, they are not entitled to a presumption of future persecution. 8 C.F.R. § 1208.16(b)(2). Rather, they must affirmatively establish a clear probability of future persecution by demonstrating (1) the likelihood of individualized persecution, or (2) a pattern or practice of persecution against a group to which Petitioners belong (i.e., Indonesian Christians) such that it is more likely than not that petitioners' lives or freedom would be threatened. *Woldemeskel v. INS*, 257 F.3d 1185, 1190–91 (10th Cir. 2001). We agree that Petitioners have failed to satisfy this burden.

Petitioners allege three grounds to support their claim that "there is more than 50% chance" they will suffer future persecution if forced to return to Indonesia:

> (1) the testimony of the petitioners regarding those terrible experiences encountered by them due to their religion; (2) the Department of State's report on the country condition and religious freedom; (3) the most recent incidents that had happened to three Christian women whose heads were cut off by extreme Muslims.

Pet. Brief at 8.  But these claims, without more, are insufficient to satisfy the standard of proof.  They neither show a likelihood of individualized persecution nor a pattern or practice of persecution against a group to which Petitioners belong.

Petitioners' first point—that future persecution can be inferred from the abuses they suffered in the past—is unpersuasive since we have already rejected the notion that the past incidents amounted to persecution.

Petitioners' second point, which attempts to establish a pattern or practice of persecution against religious minorities in Indonesia, likewise fails.  The State Department reports are, at best, equivocal.  On the one hand, they provide that Indonesian government policy "provides for all persons the right to worship according to his or her own religious belief."  A.R. at 119.  On the other hand, they note that the government  "occasionally" tolerates discrimination by private actors.  *Id.*  Nevertheless, the bottom line is that, "in most parts of Indonesia, people are generally able to worship as they wish with no interference from the state or their neighbors of other faiths."  *Id.* at 118.

We agree with the government that these reports cannot compel a finding that Petitioners are likely to suffer future persecution in Indonesia because of their religion.  In over a dozen opinions addressing similar facts, we have declined to find Indonesian Christians have a well-founded fear of future persecution on account of their religion.  *See*, *e.g.*, *Tulengkey*, 425 F.3d at

1281–82 (substantial evidence supported IJ's determination that petitioners did not have a well-founded fear of persecution based on their Christian faith); *Mart v. Gonzales*, No. 06-9548, 2007 WL 466315 (10th Cir. Feb. 14, 2007) ("[T]he evidence simply does not support the conclusion that Christians in Indonesia suffer organized, systematic, or pervasive persecution."); *Bastian v. Gonzales*, 187 F.App'x 891, 894 (10th Cir. 2006) (substantial evidence supported IJ's decision to deny asylum on basis that anti-Christian violence in Indonesia appears to be decreasing); *Sutanto v. Gonzales*, 123 F.App'x 380, 383 (10th Cir. 2005) (petitioner's individual experience of anti-Christian hostility was "minor and isolated" and he had also failed to demonstrate likelihood of future persecution because he could choose to live in a predominantly Christian city).

Finally, Petitioners' unsubstantiated reference to the killing of three Christian women is also insufficient to satisfy the requirements for establishing that future persecution is more likely than not. Without more, three deaths – though tragic and senseless – are not a proxy for establishing a pattern or practice of persecution against members of the Christian faith in a country of over 240 million people. "A pattern or practice of persecution has been defined as 'something on the order of organized or systematic or pervasive persecution.'" *Woldemeskel*, 257 F.3d at 1191 (internal quotation and citation omitted). The evidence on the record here cannot satisfy this standard.

In sum, the IJ's decision is supported by substantial evidence in the record. Nothing suggests that Petitioners face a clear probability of persecution upon return to Indonesia and therefore their petitions for review must be denied.

### III. Conclusion

For the reasons stated above, the petitions for review are DENIED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge