FILED
United States Court of Appeals
Tenth Circuit

January 10, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

NA ZHENG; JIN DE PAN,

      Petitioners,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 11-9598
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

Na Zheng and Jin De Pan petition for review of a final removal order from the

Board of Immigration Appeals (BIA). Exercising jurisdiction under 8 U.S.C.

§ 1252(a), we grant the petition because the BIA's credibility determination was not

adequately founded on cogent and substantially reasonable bases and because the

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BIA did not consider the documentary evidence in deciding whether petitioners met their burden of proof.

## I. BACKGROUND

Ms. Zheng and Mr. Pan are natives and citizens of China. Both illegally entered the United States—Mr. Pan in 1998, and Ms. Zheng in 2001. They had a son in 2006, were married in August 2007, and had a daughter in March 2008. They filed an application for asylum in September 2007, shortly after learning that Ms. Zheng was pregnant with their second child. Ms. Zheng was the lead petitioner and Mr. Pan was a derivative petitioner. Their application was based on their fear that, if removed to their homeland, they would be subjected to involuntary abortion (if Ms. Zheng was still pregnant when removed) or sterilization and fines under China's one-child family-planning policy. After their application was denied, they were placed in removal proceedings. Those proceedings began in New York City but were transferred to Denver in 2008. During the removal proceedings, they conceded removability but sought asylum, restriction on removal, and relief under the United Nations Convention Against Torture (CAT).

At a merits hearing in Denver before an Immigration Judge (IJ), only Ms. Zheng testified. She was twenty-eight years old at the time. In a written decision, the IJ found that Ms. Zheng was not credible and gave her testimony "little to no evidentiary weight." R. at 110. He concluded that her testimony alone was insufficient to meet her burden of showing that she is a refugee. The IJ then

considered documentary evidence offered to corroborate her claim and concluded that it also was insufficient to meet her burden of proof. Therefore, the IJ denied asylum. The IJ further denied restriction on removal and CAT relief.

Petitioners appealed to the BIA, which upheld the IJ's decision and dismissed the appeal. The BIA found no clear error in the IJ's credibility finding. The BIA considered the lack of credibility dispositive of asylum relief and therefore declined to reach whether Ms. Zheng would have met her burden of proof to show a well-founded fear of future persecution if she had been found credible. The BIA further concluded that because Ms. Zheng failed to meet the burden of proof required for asylum, she also failed to meet the higher burden of proof for restriction on removal. Additionally, the BIA deemed Ms. Zheng's request for CAT relief abandoned because she had not contested the IJ's denial of it.

## II.    STANDARDS AND SCOPE OF REVIEW

A single BIA member entered a brief order under 8 C.F.R. § 1003.1(e)(5) affirming the IJ's decision. We therefore review the BIA's decision as the final order of removal. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). Consequently, we "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Id.* But we "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). And "when seeking to understand the grounds provided

- 3 -

by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro*, 443 F.3d at 1204.

We review any questions of law de novo, and we determine whether substantial evidence supports the agency's findings of fact. *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011). Whether petitioners have shown a well-founded fear of future persecution is a question of fact. *See id.* "[O]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro*, 443 F.3d at 1204 (alteration in original) (internal quotation marks omitted). "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr*, 474 F.3d at 788-89 (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B). "[O]ur review is confined to the reasoning given by the [agency], and we will not independently search the record for alternative bases to affirm." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

Petitioners have not argued that the BIA erred in affirming the denial of restriction on removal or in deeming their request for CAT relief abandoned. They have therefore waived review of those issues on appeal. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived."). Our review is confined to the asylum claim.

## III.    DISCUSSION

### A.    Legal Background

To be eligible for asylum, an alien must first show that she is a "refugee." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004).  To establish refugee status, the applicant must demonstrate that she has suffered past persecution or has "a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).

Petitioners do not claim past persecution.  Their asylum claim is founded solely on their fear of future persecution—that if they are returned to China, they will be involuntarily sterilized and heavily fined (or face confiscation or destruction of their property if they do not pay the fine) for having violated China's one-child policy.  "Aliens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution."  *Wiransane*, 366 F.3d at 893 (alterations and internal quotation marks omitted).

Involuntary sterilization and economic hardships can constitute persecution under the immigration laws.  *See* 8 U.S.C. § 1101(a)(42) (providing that a person "shall be deemed to have a well founded fear of persecution on account of political opinion" if the person "has a well founded fear that he or she will be forced to

undergo [involuntary sterilization]"); *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1231 (10th Cir. 2012) ("Economic hardships may qualify as persecution" if "the government imposes penalties so severe that it jeopardizes the petitioner's life or freedom" or "when the government deliberately places the petitioner at a severe economic disadvantage even though he is spared the bare essentials of life," including "particularly onerous fine[s], . . . large-scale confiscation of property, or a sweeping limitation of opportunities to continue to work in an established profession or business" (internal quotation marks omitted)).

## B.    The BIA's Decision on Credibility

The BIA's decision rests solely on Ms. Zheng's credibility. "Credibility determinations are factual findings . . . subject to the substantial evidence test." *Uanreroro*, 443 F.3d at 1204. As such, "we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001). "An IJ's credibility determination is reviewed with deference, but the court must not blindly accept that finding; the IJ must provide specific, cogent reasons for not believing the petitioner." *Chaib v. Ashcroft*, 397 F.3d 1273, 1278 (10th Cir. 2005). Credibility findings can be based on "any inaccuracies or falsehoods" in an asylum applicant's written or oral statements "without regard to whether an inconsistency, inaccuracy, or

falsehood goes to the heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii).[1]

But "the trier of fact must look to the 'totality of the circumstances' and 'all relevant

factors.'"  *Sarr*, 474 F.3d at 789 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)).

For the most part, the BIA repeated the IJ's findings regarding Ms. Zheng's

credibility and relied on them.  Hence, we will largely discuss the IJ's findings

directly.  *See Uanreroro*, 443 F.3d at 1204.  The IJ noted four problem areas in

Ms. Zheng's testimony, which we address in turn.

### 1.    The Colorado Addresses

First, the government questioned whether petitioners engaged in forum

shopping by, allegedly, fabricating residence in Colorado to obtain a change of venue

---

[1]    Section 1158(b)(1)(B)(iii) applies in this case because petitioners filed their asylum application after May 11, 2005, the effective date of the REAL ID Act, which added the language permitting consideration of matters outside the heart of the asylum claim.  *See Ismaiel v. Mukasey*, 516 F.3d 1198, 1205 n.5 (10th Cir. 2008).  In relevant part, the statute provides:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

from New York. The hearing had been adjourned several times to permit the parties to exchange documentary evidence on the issue. At the final hearing, Ms. Zheng testified that she and her husband resided in Colorado Springs but worked at a restaurant in Fort Collins, some 130 miles away, where they lived with other workers in an employer-provided dorm for up to three weeks at a time. She further testified that they spent only one or two days a month at their Colorado Springs residence. She could recite the street address of her Colorado Springs residence but was uncertain about the street address she gave for the dorm in Fort Collins. The IJ found it "implausible" that Ms. Zheng could remember the Colorado Springs address but not the Fort Collins address, and considered it "[u]nfortunate[]" that "there were no questions on re-direct to explain [her] inability to remember an address where she allegedly spends most of her time." R. at 109. However, the IJ declined to determine whether petitioners "did, in fact, engage in 'forum shopping,'" despite finding "the evidence with regards to [their] residence, especially the testimonial evidence, dubious at best." *Id.*

Ms. Zheng disputes the IJ's reliance on her uncertainty about the Fort Collins address on two grounds. First, she testified on cross-examination that she thought the address of the Fort Collins dorm was "2489 Anneles," adding that she was "not quite sure" because her "boss just take us around," and she doesn't "really pay attention." *Id.* at 174. She claims this explanation was plausible and points out that she was able to give the correct address of the restaurant. Second, Ms. Zheng acknowledges that

credibility findings need not be based on matters that go "to the heart of the applicant's claim," 8 U.S.C. § 1158(b)(1)(B)(iii), but she also points out that the agency must consider "the totality of the circumstances, and all relevant factors." *Id.* She thus contends that her uncertainty about the Fort Collins address is not relevant to her credibility.

The IJ's reliance on Ms. Zheng's inability to be certain of the Fort Collins address while at the same time being able to provide her Colorado Springs address was not a "cogent" reason for disbelieving Ms. Zheng, *Chaib*, 397 F.3d at 1278, nor was it "substantially reasonable," *Woldemeskel*, 257 F.3d at 1192. She gave an address for the Fort Collins dorm and a plausible, reasonable explanation why she was unsure about it. The IJ mentioned that explanation but never stated why he found it unpersuasive. And it is unsurprising that Ms. Zheng would know her Colorado Springs address because that is the address on utility bills submitted in support of venue in Colorado.

Additionally, the relevance of her ability to recall the addresses appears limited to whether petitioners were forum shopping. It has little or no connection to the credibility of their fear—objective or subjective—of future persecution. We recognize that § 1158(b)(1)(B)(iii) grants the trier of fact latitude to consider a matter having virtually no connection to fear of future persecution. But in *Ismaiel v. Mukasey*, we said that "the significance of an omission [from an asylum application] must be determined by the context, and rigid rules cannot substitute for common

sense." 516 F.3d 1198, 1205 (10th Cir. 2008). Ms. Zheng's uncertainty about the

Fort Collins address is benign as to her credibility, and *Ismaiel*'s requirement that

context determines significance applies here. Section 1158(b)(1)(B)(iii) calls for

"[c]onsider[ation of] the totality of the circumstances, and all relevant factors" when

making credibility determinations.[2] *See also Lin v. Mukasey*, 534 F.3d 162, 164

(2d Cir. 2008) (holding that, after the REAL ID Act, "an IJ may rely on omissions

and inconsistencies that do not directly relate to the applicant's claim of persecution

as long as the totality of the circumstances establish that the applicant is not

credible").

The context here shows that Ms. Zheng's inability to recall with certainty the

Fort Collins address was understandable and insignificant. She gave a plausible,

reasonable explanation; the IJ did not specifically explain why that explanation was

insufficient; and there is a good reason why she could recall the Colorado Springs

address. Ms. Zheng's testimony regarding the addresses was therefore a substantially

unreasonable basis for finding her not credible regarding her fear of future

persecution. We require cogent and substantially reasonable bases for adverse

---

[2]     *Ismaiel* concerned an asylum application filed prior to the effective date of the
REAL ID Act. However, its context rule governs cases involving applications filed
after that date because, as *Ismaiel* recognized, even prior to the REAL ID Act, this
court did not require that omissions from asylum applications go to the heart of the
asylum claim to provide a basis for an adverse credibility finding. *See Ismaiel*,
516 F.3d at 1205-06 & n.5.

credibility findings, s*ee Ismaiel*, 516 F.3d at 1205; *Chaib*, 397 F.3d at 1278;

*Woldemeskel*, 257 F.3d at 1192, and that standard was not met here.

## 2. Location of Children

The IJ's second difficulty with Ms. Zheng's testimony concerned her

comments about her children. On cross-examination, Ms. Zheng stated that her

sister-in-law takes care of the children when she and her husband work in Fort

Collins. The following exchange then took place:

> Q. And where are your children at?
> A. At home.
> Q. In?
> A. Oh, this couple of day, they were in New York.
> Q. Your children are in New York?
> A. Because the aunts took them there.
> Q. Your children don't even live with you?
> A. Sometimes, they were with us.
> Q. When was the last time they lived with you?
> A. It's this time when I went to New York to see my attorney.
> Q. When was the last time they lived with you in Colorado?
> A. About three months ago.
> . . .
> Q. And how often do you see your children?
> A. Once every three to four months.
> Q. For how long?
> A. One to two days.

R. at 175-76. Ms. Zheng further stated her daughter was only six months old when

they moved to Colorado. The couple left her in New York "[b]ecause the baby was

very small and transportation is not easy." *Id.* at 177. The IJ found this testimony to

be "vague and unconvincing," and also said that there was "no re-direct to clarify any

of these inconsistences." *Id.* at 109.

- 11 -

Ms. Zheng objects to the IJ's consideration of this testimony, claiming only that the IJ improperly judged whether she was a good mother. We do not understand the IJ's comments as addressing her parenting ability; his opinion was that her testimony was "vague and unconvincing" and contained "inconsistencies." *Id.* We fail to see how that finding bears on credibility. Ms. Zheng answered the questions that were posed. Even if her children lived with their aunt in New York, there was nothing inherently unbelievable or inconsistent in her response that they were "[a]t home." *Id.* at 175. Instead, this line of questioning appears pertinent to the forum-shopping issue, and the IJ declined to find that petitioners were forum shopping. We also fail to understand the IJ's comment on the need for re-direct given this testimony's marginal relationship to credibility and petitioners' burden of proof. We conclude that Ms. Zheng's testimony about her children was not a cogent or substantially reasonable basis to find her not credible regarding her fear of future persecution. *See Ismaiel*, 516 F.3d at 1205; *Chaib*, 397 F.3d at 1278; *Woldemeskel*, 257 F.3d at 1192.

### 3. Dates of Relatives' Sterilizations

Third, the IJ found that Ms. Zheng exhibited "selective memory" that "greatly minimize[d] her credibility" because she was able to recite the exact dates that four relatives were involuntarily sterilized, all of which occurred after she left China, but she was unable to remember the year in which she witnessed her uncle involuntarily sterilized while she was still in China. R. at 109. The IJ observed that "there was no

effort on re-direct to establish why the respondent was able to precisely recall sterilizations that she did not witness yet was only able to tell the Court that the sterilization she did witness fell within a span of four to six years, 'sometime in middle school or high school.'" *Id.*

As petitioners point out, the dates that the four relatives were sterilized are set out in letters they wrote describing their sterilizations, and those letters were admitted into evidence in support of petitioners' claims. It is therefore unsurprising that Ms. Zheng could recite the dates at the hearing. And as to her uncle's sterilization, it is unremarkable that, at age twenty-eight, Ms. Zheng would be unable to recall the exact year for an event that happened "more than 10 years ago," when she "was a teenager" and still "in middle school or high school." *Id.* at 181.

Although the IJ faulted Ms. Zheng for providing no explanation on re-direct, she was never questioned during cross-examination about her recall of the dates of the four relatives, so there was no reason to bring it up on re-direct, which would have been beyond the scope of cross-examination. And she explained during cross-examination that the incident with her uncle happened while she was still in middle or high school, more than ten years earlier. Given that the dates of the other four relatives were in the record, we see no support for the IJ's finding that Ms. Zheng's "selective memory greatly minimize[d] her credibility." *Id.* at 109. Ms. Zheng's ability to recite the precise dates of the four relatives' sterilizations but not the precise date of her uncle's sterilization was not a cogent or substantially

reasonable basis for finding her not credible regarding her fear of future persecution. *See Ismaiel*, 516 F.3d at 1205; *Chaib*, 397 F.3d at 1278; *Woldemeskel*, 257 F.3d at 1192.[3]

### 4.     Omission of Relatives

The fourth problem area the IJ identified in his credibility analysis concerned discrepancies between petitioners' asylum application and Ms. Zheng's testimony regarding relatives that had been sterilized.  In the application, she listed her "father, aunt-in-law, aunt, sister-inlaws [sic], husband's cousin, neighbors and friends."  R. at 2420.  But in her testimony, she said "[m]y father, my uncle, my husband's three sisters, his cousin, and the neighbor, and other relatives."  *Id.* at 163.  She also testified about two of her cousins and two of Mr. Pan's cousins, all of whom had described their sterilizations in written letters that were admitted into evidence.

The IJ was concerned about the omission of her uncle and her two cousins from the application and the omission of the aunt and aunt-in-law from her testimony.  The IJ noted Ms. Zheng's explanation that "she does not know why her

---

[3]     The record does not support the BIA's concern about Ms. Zheng's testimony that she had "witnessed" some relatives being sterilized when she was living in the United States, R. at 4; *see id.* at 163.  She clarified on cross-examination that she was referring to information in letters sent to her or her husband in the United States from relatives in China, *Id.* at 183-84.  Because the IJ did not rely on this testimony for his credibility finding, he did not share the BIA's concern.  He noted that, apart from her uncle, Ms. Zheng "did not testify as to any other situations where she witnessed individuals being subjected to forced sterilization."  *Id.* at 102.  If the BIA's affirmance of the IJ's credibility finding relied on its concern, it exceeded the permissible scope of review.  *See* 8 C.F.R. § 1003.1(d)(3)(i); *Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008).

uncle was not included in the application" and that "she did tell the person who helped her fill out the application." *Id.* at 110. Nevertheless, the IJ considered the omission significant because it concerned "a seemingly traumatic event that goes to the heart of her subjective fear of returning to China." *Id.* The IJ also considered Ms. Zheng's failure to name "her cousins on her asylum application or to mention her aunt or aunt-in-law in her oral testimony" as going "to the heart of her asylum claim." *Id.*[4] Further, the IJ noted that Mr. Pan did not testify despite that two of the witnesses who submitted letters were his relatives and he "could have corroborated many of the unconvincing elements of Ms. Zheng's testimony." *Id.*

Petitioners first take issue with the IJ's treatment of the omission of Ms. Zheng's uncle from the asylum application. As they contend, Ms. Zheng gave a reason for the omission, which the IJ noted in his decision. Although the IJ then went on to criticize the lack of explanation on re-direct, Ms. Zheng had given her reason on cross-examination. Compounding this inconsistency in the IJ's reasoning, Ms. Zheng's attorney, who appeared telephonically, stated during re-direct that she

---

[4]    Although the BIA did not specifically refer to the omissions of the aunt, aunt-in-law, or two cousins, we view the BIA's decision as relying on or incorporating the entirety of the IJ's credibility findings. The BIA began its discussion of the IJ's bases by stating, "The [IJ] based his adverse credibility determination on several problems with [Ms. Zheng's] testimony . . . . *Among them are as follows*[.]" R. at 4 (emphasis added). By using the phrase "[a]mong them are as follows," the BIA signaled that it would not necessarily repeat all of those reasons, but was concluding that none of them, including the omission of the aunt, aunt-in-law, and two cousins, were improper.

had a handwritten asylum application naming the uncle, and she offered to provide it, but nothing further transpired. Thus, the omission of the uncle is likely a clerical error, and the IJ should have explored it further because he has some duty to develop the record: "[W]hile the burden of proof in principle rests on the applicant, the duty to ascertain and evaluate all the relevant facts is shared between the applicant and examiner," and "[t]he role of the asylum adjudicator is to ensure that the applicant presents his case as fully as possible and with all available evidence." *In re S-M-J-*, 21 I. & N. Dec. 722, 729 (BIA 1997) (alterations and internal quotation marks omitted).

If the omission of Ms. Zheng's uncle from her asylum application was a clerical error, it "may not form the basis of an adverse credibility finding unless the IJ or the BIA specifically explains the significance of the discrepancy or points to the petitioner's obvious evasiveness when asked about it." *Kumar v. Gonzales*, 444 F.3d 1043, 1051-52 (9th Cir. 2006). The IJ did not explain why he rejected the clerical explanation, *see id.* at 1052 (faulting IJ for not giving such an explanation), and Ms. Zheng was not evasive in answering questions about the omission. We therefore conclude that the omission of the uncle was not a cogent or substantially reasonable basis for finding Ms. Zheng not credible.

Regarding Ms. Zheng's omission of her aunt and aunt-in-law from her testimony, petitioners contend that her testimony was consistent with her application. We agree. At the hearing, Ms. Zheng named her father, her uncle, her husband's

- 16 -

three sisters, her husband's cousin, a neighbor, "*and other relatives*." R. at 163 (emphasis added). The reference to "other relatives" is sufficient to include the aunt and aunt-in-law for credibility purposes, particularly when Ms. Zheng was not asked about this omission during cross-examination. She would therefore have had no reason to offer an explanation on redirect. This was accordingly not a cogent and substantially reasonable basis for questioning Ms. Zheng's credibility.

Turning to the omission of Ms. Zheng's cousins from the application, petitioners' only argument is that they were not required to list every detail in their application. Before addressing this argument, we note that one of the two cousins was sterilized *after* Ms. Zheng filed her asylum application. The application is signed and dated September 17, 2007, *id.* at 2424, but the letter from the cousin says she was forcibly sterilized on November 12, 2007, *id.* at 2135. Thus, the omission of the one cousin from the application is irrelevant to Ms. Zheng's credibility.

In contrast, Ms. Zheng provided no explanation for the omission of the other cousin, who reported being sterilized in 2005, and no explanation is obvious from the record. Because Ms. Zheng was not questioned about the omission during cross-examination, we see no reason that her failure to offer an explanation on re-direct, as the IJ would have liked, was particularly damaging to her credibility. And Ms. Zheng listed a number of relatives in her application, omitting only the one cousin. Although we agree with petitioners that asylum applicants need not list every detail in their application, we also think that the omission of the one cousin is a

proper reason to question Ms. Zheng's credibility. Significantly, however, it is the only basis that survives our analysis and strikes us as weak because the cousin was omitted from a string of relatives listed in the application.[5]

We therefore conclude that the BIA (or the IJ, if the BIA so determines) should address the significance of the omission and how it affects the weight to be afforded to Ms. Zheng's testimony in the burden-of-proof analysis. The IJ gave her testimony "little to no evidentiary weight," *id.* at 110, and the BIA said that her lack of credibility was "dispositive," *id.* at 5. But those determinations relied on multiple bases that have been rejected. Because only one relatively weak basis remains, the BIA (or the IJ, if the BIA so determines) must also consider the documentary evidence in determining whether petitioners met their burden of proof:

> Despite an adverse credibility determination, applicants for asylum can establish past persecution through independent evidence. Where independent evidence apart from the applicant's testimony and application statement exists, the agency must consider whether it is sufficient to establish a claim of past persecution. The agency may not ignore such evidence and reject the claim solely on the basis of the adverse credibility determination.

*Djadjou v. Holder*, 662 F.3d 265, 275 (4th Cir. 2011) (citations omitted), *cert. denied*, 81 U.S.L.W. 3075 (U.S. Dec. 10, 2012) (No. 12-173).

---

[5] To the extent the adverse credibility finding relied on the fact that Mr. Pan could have offered corroborating evidence but did not testify, that factor is largely irrelevant in view of our analysis that only the omission of one of Ms. Zheng's cousins from the application is a potentially valid basis for finding her not credible. We fail to see what helpful corroborating evidence Mr. Pan might have provided regarding that one omission or how the mere fact that he did not testify bears on whether Ms. Zheng credibly testified about the cousin.

Although *Djadjou* involved past persecution, its rule that an agency cannot ignore documentary evidence and reject an asylum claim solely on credibility grounds applies with even greater force where the asylum request is based only an alleged fear of future persecution and the applicant provides both testimonial and documentary evidence. Where, as here, the basis for the asylum claim is less focused on the specifics of what happened to the applicant personally and is more concerned with longstanding, widespread persecution, independent information about country conditions becomes more important:

> If an intelligent assessment is to be made of an asylum application, there must be sufficient information in the record to judge the plausibility and accuracy of the applicant's claim. Without background information against which to judge the alien's testimony, it may well be difficult to evaluate the credibility of the testimony. We note that this problem is addressed in the Office of the United Nations High Commissioner for Refugees, Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees para. 42 (Geneva, 1979) ("Handbook"), which includes the following observations:
>
>> The applicant's statements cannot, however, be considered in the abstract, and must be viewed in the context of the relevant background situation. A knowledge of conditions in the applicant's country of origin—while not a primary objective—is an important element in assessing the applicant's credibility.
>
> . . .
>
> Particularly when the basis of an asylum claim becomes less focused on specific events involving the respondent personally and instead is more directed to broad allegations regarding general conditions in the respondent's country of origin, corroborative background evidence that establishes a plausible context for the persecution claim (or an explanation for the absence of such evidence) may well be essential.

- 19 -

> The more sweeping and general a claim, the clearer the need for an asylum applicant to introduce supporting evidence or to explain its absence.  Furthermore, there is a greater likelihood that corroborative evidence will be available if the claim is of longstanding, widespread persecution.

*Matter of Dass*, 20 I. & N. Dec. 120, 124-25 (BIA 1989).[6]  Viewing the omission of the one cousin in isolation from the documentary evidence would not lead to an "intelligent assessment" of petitioners' asylum request.  *Id.* at 124.

The Seventh Circuit's decision in *Capric v. Ashcroft*, 355 F.3d 1075 (7th Cir. 2004), is instructive.  The court drew a distinction between a credibility analysis and an asylum applicant's burden of proof, stating that when testimony is found to be incredible, an asylum applicant can still meet her burden of proof by providing either "a convincing explanation of the discrepancies or extrinsic—and credible— corroborating evidence."  *Id.* at 1086.  The *Capric* court further noted that "[a] credibility analysis assesses the applicant's claim only for internal consistency, detail, and plausibility, typically demonstrated by background evidence concerning general country conditions, if available.  A credibility analysis should not be confused with a burden of proof analysis, which considers and weighs all the surrounding evidence."  *Id.* at 1085 (citations omitted).  The IJ appears to have followed this distinction, but the BIA did not.

---

[6]     Although the *Handbook* referenced in *Matter of Dass* is not binding on an IJ or the BIA, the BIA considers it advisory.  *See Matter of E-A-, Applicant*, 26 I. & N. Dec. 1, 8 (BIA Sept. 11, 2012) ("the *Handbook* is advisory but . . . not binding [on the BIA]").

In sum, the best course, given our deferential review of agency credibility determinations and our rejection of all but one relatively weak basis for the adverse credibility finding, is to remand the matter to the BIA so that it (or the IJ, if the BIA so determines), can revisit the weight that should be afforded Ms. Zheng's testimony in conjunction with the documentary evidence in determining whether petitioners met their burden of proof to show a well-founded fear of future persecution.

## IV.    Conclusion

For the foregoing reasons, we grant the petition for review and remand this matter for further consideration consistent with the foregoing analysis.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge